ment and was so specifically held in this very case in the former appeal (*Queen City Sav. & L. Co.* v. *Stiens,* 64 Ohio App., 531, 29 N. E. [2d], 160).

The judgment is affirmed.

*Judgment affirmed.*

MATTHEWS, P. J., and HAMILTON, J., concur.

BECKER, APPELLANT, *v.* THE CLEVELAND TRUST CO.; CAREY, APPELLEE.

(No. 18339—Decided July 23, 1941.)

*Mr. William J. Hawley* and *Mr. J. W. McCarron,* for appellant.

*Mr. Paul P. Sogg,* for appellee.

By the Court. This is an appeal on questions of law and fact duly perfected by the filing of the appropriate notice and bond within the statutory period. It brings the case to this court for a determination of the original issues and not merely to review the decision of a trial court to determine whether any prejudicial error of law had been committed by that court. The filing of a motion for a new trial was not required as a condition precedent to the appeal or to enlarge the scope of the appeal. The failure to file such a motion, therefore, is not a basis for the dismissal of the appeal. *Liberal Savings & Loan Co.* v. *Frankel Realty Co.,* 137 Ohio St., 489, 30 N. E. (2d), 1012. The motion to dismiss the appeal is overruled.

This is an action invoking the equitable jurisdiction of the court to recover certain stocks and money, the legal title to which was transferred to the defendant, Jean Carey, appellee herein, under circumstances which make it inequitable, as alleged by the plaintiff, for her to hold against the claim of the plaintiff.

The evidence shows that the plaintiff is a widow 67 years of age, and that she adopted the appellee, Jean Carey, when she was ten years of age. She is now 28 years old. The plaintiff had no children of her own blood and a deep affection manifestly developed between her and this adopted daughter. Plaintiff made a will giving appellee everything. Prior to and after her marriage, the appellee lived with the plaintiff in the plaintiff's home until she sold it, and then when the appellee established a home of her own the plaintiff lived with her until after the transfer of the property involved in this action.

In 1936, the plaintiff suffered an accidental injury, and while she was so afflicted, transferred all or at least some of her property to the appellee and when the plaintiff recovered, the appellee returned it to her.

The plaintiff testified that the return of the property was in pursuance of an express contract to that effect. She also testified that in many conversations with the appellee thereafter, it was agreed between them that if the plaintiff should become sick she would transfer her property to the appellee under the same terms, that is, to be held and managed by the appellee during the plaintiff's sickness and returned to plaintiff upon her recovery or request.

Then in August 1940, the plaintiff was suddenly and totally incapacitated by coronary thrombosis while at the appellee's home. She was unconscious and the appellee and all others recognized that the plaintiff's condition was critical and that death was imminent and might come without warning. Their recognition of this fact was so strong that the plaintiff was sent to the hospital immediately and a spiritual adviser was summoned, and the appellee became most active in securing the transfer to her of all the plaintiff's property of any substantial value including a bank deposit of more than $17,000. Within two weeks thereafter a mortgage owned by the plaintiff and various stocks were transferred on the records to the appellee, and at the end the plaintiff had nothing.

This all took place while the plaintiff was in the hospital and admittedly in a critical condition, although the evidence is conflicting as to the effect that such condition had upon her mental faculties. The plaintiff testified she had very little or no recollection of what transpired. Others testified that she was entirely normal. It is certainly clear that the appellee herself believed that the plaintiff's mind has become affected from some cause and was affected after she returned to the appellee's home, and even after this action was filed.

Now the appellee testified that when the plaintiff transferred all her property to her while she was in the hospital, under these conditions, she imposed no

condition whatever on the transfer, that it was an absolute unconditional gift by a person in full possession of her faculties without any contemplation of death resulting from her sickness. The plaintiff does not claim that she imposed any condition at the time—she has very little memory of what occurred—but she says that the transfer was in pursuance of the agreement of long standing between them, that when the circumstances arose that it would be done and that the property would be returned to her upon her recovery or request, and that this agreement was made because of her full confidence in the appellee. One of the appellee's witnesses said that the plaintiff, at the time she signed some of the papers, mentioned that she could trust the appellee to do the right thing.

The conduct of the parties corroborates the plaintiff's contention and testimony that there was some agreement for return. Almost immediately after the plaintiff returned to the appellee's home, she asked for the return of the property, so that she could handle her own affairs. The appellee manifested reluctance to return the property and this reluctance seems to have been based in part, at least, on the belief, real or assumed, that the plaintiff was still incapable of handling the property on account of her mental condition. But the appellee finally did agree to return it, and started to do so, but stopped short of completing the re-transfer, and eventually refused to comply with the plaintiff's demand.

There are too many details in the evidence to refer to all of them, but we have considered all in reaching the conclusion that there was an actual agreement as claimed by the plaintiff that the appellee would hold this property in trust for her.

In view of this finding, the distinction between gifts *inter vivos* and gifts *causa mortis* is not determinative of the rights of the parties. However, we would reach the same conclusion by the application of the prin-

ciples of gifts *causa mortis* to the circumstances disclosed by the evidence which would raise the legal implication of the same agreement or condition. The evidence shows that the gift was in contemplation of death from the existing affliction, and was, therefore, a gift *causa mortis*. It appears that during all the time these transfers were being made the plaintiff was in a precarious physical condition—her death from the ailment was feared by all those cognizant of the facts and by the plaintiff herself. Clearly, her condition and her knowledge of it motivated her action. That is sufficient to import into a gift, absolute in terms, the conditional provision of a gift *causa mortis*. 24 American Jurisprudence, 732 *et seq*, Section 4 *et seq.; Braun* v. *Brown,* 14 Cal. (2d), 346, 94 P. (2d), 348, 127 A. L. R., 773; 20 Ohio Jurisprudence, 44 *et seq.,* Section 38.

For these reasons, we find in favor of the plaintiff and a decree may be entered granting the relief prayed for.

*Decree for appellant.*

MATTHEWS, P. J., ROSS and HAMILTON, JJ., concur.

MATTHEWS, P. J., ROSS and HAMILTON, JJ., of the First Appellate District, sitting by designation in the Eighth Appellate District.