RASALAN et al., Appellees,

v.

TJX OPERATING COMPANIES, INC. et al., Appellants.█

[Cite as *Rasalan v. TJX Operating Cos., Inc.* (1998), 129 Ohio App.3d 364.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 18619.

Decided Aug. 12, 1998.

*Thomas J. Intili,* for appellees.

*Alan M. Petrov* and *Timothy J. Fitzgerald,* for appellants.

SLABY, Presiding Judge.

The appellants, TJX Operating Companies, Inc., d.b.a. T.J. Maxx, Lori Carpenter, and Monica Bray, appeal from the trial court's judgment in favor of the appellees, Aurora U. Rasalan and Amador P. Rasalan, M.D. We reverse and remand.

On November 12, 1991, Rasalan went shopping with her friend, Harris, at the Chapel Hill T.J. Maxx in Akron. Before going to T.J. Maxx, the two women shopped at other stores and then went to lunch. At one of the stores, Harris had observed Rasalan leave her cloth glove with trim on a counter and had returned the glove to Rasalan. When the two women finished their lunch, Harris saw Rasalan take a black leather glove out of her purse and then return it to her purse as Rasalan was looking for change for a tip. After paying the tip, Rasalan and Harris proceeded to T.J. Maxx.

The security guard on duty at the time, Millicent Bellevoir, stopped Rasalan and brought her to the Loss Prevention Room because she suspected that Rasalan had shoplifted a pair of black leather gloves. Monica Bray, another employee at T.J. Maxx, witnessed Bellevoir stop Rasalan and observed Rasalan in the Loss Prevention Room until Bray was relieved by Lori Carpenter, a T.J. Maxx store manager. According to Rasalan's civil trial testimony, she offered to pay double the price of the black leather gloves. In addition, while she was in the Loss Prevention Room, she mentioned two occasions where she had inadvertently

taken merchandise. First, she had taken a magazine out of a doctor's office. Second, she had taken eye makeup from a drug store. Also at the civil trial, Rasalan testified that she had probably purchased the gloves that she was found with on another occasion from T.J. Maxx.

The police arrived, took a report, and fingerprinted Rasalan. In addition, the police discovered that Rasalan's social security number on her license was wrong, but then determined that her social security number was correct. The police issued Rasalan a citation and escorted her out of T.J. Maxx. According to testimony at the civil trial, Rasalan had been in the Loss Prevention Room for approximately one hour and twenty-five minutes. Rasalan was prosecuted for shoplifting in Akron Municipal Court and was found not guilty.

Rasalan and her husband, Amador P. Rasalan, M.D., sued T.J. Maxx, Bellevoir, Carpenter, and Bray for (1) false imprisonment, (2) malicious prosecution, (3) abuse of process, (4) defamation, (5) intentional infliction of emotional distress, (6) negligence, (7) negligent hiring of a security guard, and (7) loss of consortium. A jury trial commenced on August 26, 1996.

After directing a verdict on several of the claims at the conclusion of the Rasalans' case, the trial court denied a motion for directed verdict on the false imprisonment, malicious prosecution, abuse of power, and negligent hiring claims. The trial court dismissed Bray and Carpenter from the malicious prosecution and abuse of process claims.

The jury returned a verdict in favor of the Rasalans and against the appellants. The jury awarded $75,000 in compensatory damages to Mrs. Rasalan and $25,000 to Dr. Rasalan for loss of consortium. The jury also awarded the Rasalans $2,000,000 in punitive damages. In addition, the jury indicated in an interrogatory that attorney fees should be awarded to the Rasalans.

The appellants moved for a judgment notwithstanding the verdict or, in the alternative, a new trial, and remittitur. On June 13, 1997, the trial court denied the motion for judgment notwithstanding the verdict, a new trial, and remittitur. The trial court also awarded the Rasalans an additional $75,000 for the attorney fees. The trial court's September 23, 1997 order provided the following:

"[I]t is ordered, adjudged and decreed that Plaintiffs, Aurora U. Rasalan and Amador P. Rasalan, M.D., recover of Defendants, The TJX Operating Companies, Inc., Millicent Bellevoir, Lori Carpenter and Monica Bray, jointly and severally, exactly one hundred thousand dollars ($100,000.00) in compensatory damages, plus exactly two million dollars ($2,000,000.00) in punitive damages, all with interest thereon at the rate of ten percent (10%) per annum, and the costs of this

action. In addition, Plaintiff is entitled to a reasonable amount of attorney's fees."

The appellants timely appeal and raise seven assignments of error.

### Assignment of Error I

"The trial court erred when it permitted an expert witness for plaintiff to render opinions based upon his review of documents and deposition testimony not admitted in evidence and when it permitted the same expert to express personal opinions concerning the credibility of witnesses."

The appellants contend that the trial court erred by allowing, over objections by the appellants' attorney, an expert witness for the Rasalans to testify regarding (1) information that was not submitted into evidence or observed by the expert, and (2) the credibility of witnesses testifying at this trial. The appellants' attorney raised their objection during the trial and in their motion for a new trial. In its June 13, 1997 denial of the appellants' motion for a new trial, the trial court ruled:

"According to [R]ule 703 of the Ohio Rules of Evidence, Plaintiff's expert witness could render an opinion based upon documents reviewed by him. The Court allowed the testimony of Plaintiff's expert witness deeming such testimony to be proper at the time. Additionally, several aspects of Plaintiff's expert testimony were rendered moot due to the granting of a directed verdict on some of Plaintiff's claims. In considering the testimony not rendered moot by the directed verdict, the Court determines that no error occurred that was so prejudicial to Defendants as to warrant the granting of a new trial."

We agree with the appellants that the trial court erred to the prejudice of the appellants in allowing an expert witness to testify regarding the credibility of witnesses testifying at this trial and information that was not admitted into evidence or observed by the expert.

The Rasalans aver that a Mr. Potter, an expert witness in the field of retail security, opined at trial that Bellevoir failed to exercise due care in apprehending and detaining Rasalan. They argue that Potter could testify as to his inferences rendered from the following evidence that was not admitted into evidence: (1) Bellevoir's academic records from the University of Akron and Kent State University, (2) Bellevoir's employment record from Hills' Department Store, and (3) Bellevoir's employment record from Fisher's Big Wheel. Although Bellevoir's application for employment with T.J. Maxx had been admitted into evidence, the above-mentioned pieces of evidence that might demonstrate that she lied on her T.J. Maxx application regarding her education and work history were not admitted into evidence. The Rasalans contend that the above information had

been presented to Potter so that he could make expert determinations as to (1) whether Bellevoir exercised due care as a security guard, and (2) whether T.J. Maxx and its employees exercised due care in administering its security measures and hiring practices with regards to security personnel. Furthermore, the Rasalans aver that Potter's expertise was required to render an opinion that Bellevoir did not meet the requisite elements of proof to conduct a proper detainment and that T.J. Maxx's harsh policy for "bad" stops influenced Bellevoir to lie.

Civ.R. 61 provides:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." See *Leichtamer v. Am. Motors Corp.* (1981), 67 Ohio St.2d 456, 474–475, 21 O.O.3d 285, 296–297, 424 N.E.2d 568, 581–582; *State ex rel. Avellone v. Bd. of Commrs. of Lake Cty.* (1989), 45 Ohio St.3d 58, 62, 543 N.E.2d 478, 482–483.

■ Trial courts enjoy broad discretion in the admission and exclusion of evidence and will not be reversed absent a clear abuse of discretion that materially prejudices the objecting party. *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 302, 224 N.E.2d 126, 130; *Barbeck v. Twinsburg Twp.* (1992), 73 Ohio App.3d 587, 592, 597 N.E.2d 1204, 1207–1208; *Humphrey v. State* (1984), 14 Ohio App.3d 15, 18, 14 OBR 18, 21–22, 469 N.E.2d 981, 985.

■ According to Evid.R. 702(A), an expert witness's testimony must either "relate[ ] to matters beyond the knowledge or experience possessed by the lay person or dispel[ ] a misconception common among lay persons." Expert opinion testimony is admissible as to an ultimate fact if the determination of such ultimate fact requires the application of expert knowledge not within the common knowledge of the jury. *State Auto. Mut. Ins. Co. v. Chrysler Corp.* (1973), 36 Ohio St.2d 151, 162, 65 O.O.2d 374, 380, 304 N.E.2d 891, 898. An expert witness "may not express an opinion upon matters as to which the jury is capable of forming a competent conclusion." *Burens v. Indus. Comm.* (1955), 162 Ohio St. 549, 55 O.O. 436, 124 N.E.2d 724, paragraph two of the syllabus. The truth or falsity of Bellevoir's trial statements and her T.J. Maxx application were not things that were outside the common knowledge of the jurors.

■ "Pursuant to Evid.R. 703, facts or data upon which an expert bases an opinion must be those perceived by him or admitted in evidence at the hearing." *State v. Jones* (1984), 9 Ohio St.3d 123, 9 OBR 347, 459 N.E.2d 526, syllabus. An expert witness's opinion "must be based upon facts within the witness' own personal knowledge or upon facts shown by other evidence." *Burens v. Indus. Comm.*, at paragraph one of the syllabus. In *State v. Jones,* the Supreme Court of Ohio concluded "that it was error to admit the expert opinion testimony based on medical reports and records which were not prepared by the expert witness and not admitted in evidence." *Id.,* 9 Ohio St.3d at 125, 9 OBR at 349, 459 N.E.2d at 528. In a case where a restaurant patron slipped and fell as he tried to sit in a chair, the First District Court of Appeals concluded the following:

"[The plaintiff] failed, in his testimony or by other admissible evidence, to provide his expert * * * with facts upon which the expert could base his opinion as to the cause of [the plaintiff's] injury. Simply put, there was nothing in the [plaintiff's] case to support [the expert's] opinion that the legs of the chair impinged or were caught up on the transition strip or the grouting. Without that support, [the expert's] opinion is legally useless in this case because it fails to meet the test mandated by Evid.R. 703." *Alley v. Wendy's Internatl., Inc.* (1995), 107 Ohio App.3d 810, 815, 669 N.E.2d 538, 541.

■ Furthermore, a trial court's admission of an expert's opinion, over an objection, that it is not based on personal knowledge or facts shown by the evidence becomes prejudicial error when substantial emphasis was placed upon that opinion in establishing the plaintiff's case. *Kraner v. Coastal Tank Lines* (1971), 26 Ohio St.2d 59, 60, 55 O.O.2d 68, 69, 269 N.E.2d 43, 44–45.

In the case at bar, the transcript of the trial reveals the following exchange between Potter, the Rasalans' attorney (Mr. Intili), the court, and the appellants' attorney (Mr. Petrov):

"Mr. Intili: Was it your understanding, Mr. Potter, that Mrs. Rasalan had a bad character from the materials you reviewed?

"Mr. Petrov: Objection, Your Honor.

"The Court: Sustained. I'm not sure the relevancy, Mr.—

"Mr. Intili: Your Honor, it's part of the claim.

"The Court: —Intili. Move on, please.

"Mr. Intili: Mr. Potter, would it be, the recitation of facts that you just explained to the jury, essentially is Mrs. Rasalan's recitation of the facts. You understand, of course, that Miss Bellevoir had a different version of the story?

"Mr. Potter: That's correct.

"Mr. Intili: And you have, for some reason, elected Mrs. Rasalan's version of the story over Miss Bellevoir's?

"Mr. Potter: That's correct.

"Mr. Intili: Okay. Please tell the jury why?

"Mr. Petrov: Objection.

"The Court: You may answer that.

"Mr. Potter: First out of all, the recitation of the facts based on the Plaintiff's statements and testimony were the, were accepted by the jury in the criminal trial when they acquitted her. Also, I found that based on the, the background, if you will, of the store detective in this particular case, that I was—I felt that her recitation of the facts was not credible.

"Mr. Petrov: Objection, Your Honor. Move to strike.

"The Court: Overruled.

"Mr. Intili: What was it about the store detective's background that you found made Mrs. Rasalan's version of the facts more credible than the store detective's?

"Mr. Petrov: Objection.

"The Court: I'll let him answer. I think all of this goes to credibility of his opinions.

"Mr. Petrov: Of Mr. Potter.

"The Court: If he is basing it on those kind of things, then I think the jury ought to know that and they can make up their own mind.

"Mr. Petrov: Very well.

"Mr. Potter: I base that on a combination of things. First being the false statements that were made by Ms. Bellevoir in her application for employment. I think integrity, the ability to tell the truth is an essential job qualification for someone who is, who is placed in the position where their statements are going to result in the arrest and possible criminal conviction of others. I also feel that the fact that she had been dismissed from employment in two similar positions for an excessive number of false arrests or as we call them in the trade, bad grabs, would indicate that she would feel, especially given T.J. Maxx policy on termination for a bad arrest or a bad grab, would place her under a tremendous amount of pressure to get out from under a situation like that. So, I feel that, you know, given her background and her apparent problem with not only with the truth but her problem with making appropriate arrests, in a retail field, I think would cause me to view her recitation of the facts with a great deal of suspicion.

"Mr. Petrov: Object to the answer. Your Honor.

"The Court: Overruled.

"Mr. Intili: Mr. Potter, I'm going to hand you, what was previously marked for identification in this case as Plaintiffs' Exhibit Number 9. Was that one of the things that you received from me concerning this case?

"Mr. Potter: This is T.J. Maxx loss prevention policy and procedure number PP–500. Subject apprehending shoplifters, which I mentioned is one of the items I reviewed.

"Mr. Intili: Would you please review the items 1 through 5 under Roman Number I and describe those for the jury?

"Mr. Petrov: Objection, Your Honor.

"Mr. Potter: You mean Roman Number II, Counsel? Five elements of proof?

"Mr. Intili: That's correct, Mr. Potter, you are quite right.

"Mr. Petrov: Objection, Your Honor.

"The Court: Overruled.

"Mr. Potter: The five elements of proof [are (1) observe suspect enter area before any merchandise is taken, (2) see suspect remove the merchandise from the rack or display, (3) be able to identify the merchandise the suspect removed, (4) maintain constant uninterrupted surveillance of the suspect, and (5) allow suspect an opportunity to pay for merchandise].

"* * *

"Mr. Intili: Based upon what you know about Mrs.—Ms. Bellevoir's application for employment, her previous employment, the forms that she filled out, and the Rasalan matter, based upon the testimony in trial and everything that you've seen in this case, do you have an opinion as to whether or not Miss Bellevoir exercised due care when she was dealing with Mrs. Rasalan on November the 12th, 1991?

"Mr. Petrov: Objection.

"The Court: Overruled.

"Mr. Potter: Yes, I do.

"Mr. Intili: What is that opinion?

"Mr. Petrov: Objection.

"The Court: Overruled.

"Mr. Potter: My opinion is she did not exercise due care in this case.

"Mr. Intili: Based upon everything that I've just described to you and based upon your review—let me back up. Do you know what, based upon the

information that I give you, what role Millicent Bellevoir had concerning the prosecution of Mrs. Rasalan?

"Mr. Potter: Her role was that of the store detective and under T.J. Maxx policy, it was solely her decision as to whether or not to prosecute.

"Mr. Intili: Okay. Now, based upon that information and based upon everything else that you have reviewed, would a reasonable district loss prevention supervisor conclude that a prosecution was appropriate under the circumstances?

"Mr. Petrov: Objection.

"The Court: Overruled.

"Mr. Potter: In my opinion, no. I think any qualified management level person in retail security would have seen this as being a bad apprehension and cut it off right then.

"Mr. Intili: Based upon everything that I've given you, would the reasonable loss, district loss prevention supervisor conclude that there was a lack of probable cause to pursue a prosecution against Mrs. Rasalan?

"Mr. Petrov: Objection.

"The Court: Overruled.

"Mr. Potter: Absolutely.

"Mr. Intili: Based upon everything that you have read and based upon your knowledge and experience in the field of security, do you have an opinion as to whether or not the T.J. Maxx policy, whereby the store detective had the discretion to either prosecute or not prosecute, was reasonable under the circumstances and in the security field?

"Mr. Petrov: Objection.

"The Court: Overruled.

"Mr. Potter: It was not reasonable and it's basically a bad policy that is contrary to the practices that are generally followed in the field. The decision to make an arrest in a situation like that should not be unilateral because the store detective is, who is directly involved, may make a decision that is contrary to the facts in the case, when they're given an impartial review by someone else. That is why it's always important to go up the line to discuss the facts and say this is what I have and have someone say, yes or no with respect to prosecution. You want to get somebody who can look at it from a totally impartial standpoint and

"* * *

"* * *

"Mr. Intili: Now, you indicated in your earlier testimony, Mr. Potter, that, or you referred, at least to Millicent Bellevoir's employment application, did you review that in any detail?

"Mr. Potter: Yes, I did.

"Mr. Intili: And based upon—are you familiar with the standards and practices that are reasonable in the industry for hiring security personnel?

"Mr. Potter: Yes, I am. As I indicated earlier, I'm presenting a paper on it at the American Society for Industrial Security in two weeks.

"Mr. Intili: In your position in Crawford Log Hospital, are you responsible for hiring security personnel?

"Mr. Potter: Yes, I am.

"Mr. Intili: Do you consult with loss prevention departments on the subject of hiring of security personnel?

"Mr. Potter: I have, yes, on a number of occasions.

"Mr. Intili: And based upon your review of materials that I gave you and specifically the application of employment, do you have an opinion as to whether or not the hiring of Millicent Bellevoir met the standards of due care for loss prevention management?

"Mr. Petrov: Objection.

"The Court: Overruled.

"Mr. Potter: Yes, I do.

"Mr. Intili: What is that opinion?

"Mr. Petrov: Objection.

"Mr. Potter: It is my opinion it did not.

"Mr. Intili: It is founded upon what, sir?

"Mr. Potter: It is founded upon a fact she claimed a degree she did not have, law enforcement experience she did not have, and the dates of employment. There was some significant discrepancies in the dates of employment, which should have, at the very least, occasioned additional inquiry, which would have, if done by a competent investigator, indicated or developed an additional employer that was not listed on the application from which she was terminated.

"Mr. Intili: One moment, please, Your Honor."

██ Although it is within the scope of proper expert testimony for Potter to make a determination on the basis of testimony or evidence submitted to the jury regarding the historical facts of this case, the above factual evidence of falsifying

an employment application had not been testified to or documented in evidence submitted to the jury. In addition, an expert usurps the function and role of the jury when an expert testifies regarding the credibility of witnesses who testify at a trial.

We find that the trial court improperly allowed Potter to testify regarding the credibility of Bellevoir and Rasalan, two witnesses at this trial. In addition, we find that the trial court improperly allowed Potter to testify concerning Bellevoir's academic records and employment records that were not admitted into evidence or perceived by him. Upon a review of the entire record, we conclude that this error prejudiced the appellants. The jury's assessment of the historical facts that occurred on July 21, 1991 was critical to all the claims against the appellants. Accordingly, the trial court erred in denying the appellants' motion for a new trial. The appellants' first assignment of error is sustained.

## Assignment of Error II

"The jury's verdict for $100,000 in compensatory damages and $2 million in punitive damages was grossly excessive and the result of passion and prejudice due to the improper closing argument of plaintiffs' counsel."

## Assignment of Error III

"The trial court erred when it permitted the plaintiffs to introduce testimony from the foreperson of the jury which heard the criminal case against plaintiff regarding that juror's own recollection of the appearance of evidence during the jury's deliberations, where that evidence was then subsequently discarded or lost by plaintiffs."

## Assignment of Error IV

"The trial court erred when it denied the defendants' motion for directed verdict and motion for judgment notwithstanding the verdict."

## Assignment of Error V

"The trial court erred when it submitted the issue of punitive damages to the jury where no 'clear and convincing' evidence of actual malice was presented at trial."

## Assignment of Error VI

"The trial court erred when it awarded attorney's fees to plaintiffs."

## Assignment of Error VII

"The trial court erred and abused its discretion when it denied defendant's motion for remittitur."

Because our disposition of the appellants' first assignment of error is dispositive of this case, we will not address the appellants' other assignments of error because they are moot. See App.R. 12. The appellants' first assignment of error is sustained. The judgment of the trial court is reversed, and the cause is remanded for a new trial.

*Judgment accordingly.*

DICKINSON and MAHONEY, JJ., concur.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.