DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant-defendant William Fenwick appeals from a judgment rendered in favor of appellee-plaintiff Mary Weaver in the Summit County Court of Common Pleas. This Court affirms.
This case revolves around real estate located at 451 and 451~ Fan Road in Akron, Ohio ("the properties"). The properties were purchased in 1979 by Nick Santillo, who borrowed $10,000 for the down payment on the properties from his brother, Anthony Santillo. Nick died intestate in 1984; he was survived by Anthony, appellee Weaver (who was alleged to have been Nick's common-law wife), and Nick's two daughters, Veronica Johnson and Beth Fenwick (who was married to appellant Fenwick at the time). All of these parties reached an agreement, and made transactions, that resulted in Fenwick owning the properties, subject to a life estate in Weaver, and Fenwick and Weaver owing $30,000 collectively ($20,000 from Fenwick and $10,000 from Weaver) to Anthony as a mortgage on the properties.
Anthony Santillo died in 1994, and Weaver was named as administratrix of the estate. In April 1996, Weaver, on behalf of the estate of Anthony, filed a complaint in the Summit County Court of Common Pleas naming Fenwick as defendant. The complaint alleged that Fenwick owed $20,000 to the estate of Anthony Santillo. Fenwick answered the complaint.
A bench trial was held on July 15, 1998. At the trial, Fenwick attempted to introduce statements from Anthony Santillo that if he (Anthony) were to die before the properties were sold, then Fenwick would not have to repay the $20,000. Weaver objected, and the trial court sustained the objections and excluded the evidence. On July 24, 1998, the trial court issued its decision, finding in favor of Weaver in the amount of $20,000.
Fenwick timely appeals, asserting one assignment of error:
 The Trial Court committed error prejudicial to the Defendant/Appellant by excluding prior testimony of the deceased, Anthony Santillo, stating under oath that if he were to die, the debt owed to him would be forgiven thereby negating the allegation that he owed $20,000.00 to Mr. Santillo's estate.
In his sole assignment of error, Fenwick asserts that the trial court made two erroneous evidentiary rulings. First, Fenwick contends that the trial court should not have excluded statements by Anthony Santillo that if he were to die before the properties were sold, then Fenwick would not be obligated to repay the $20,000. Second, Fenwick argues that the trial court erred by excluding the testimony of Anthony Santillo, given in a prior proceeding, relating to the same issue. This Court disagrees with both arguments.
"Trial courts enjoy broad discretion in the admission and exclusion of evidence and will not be reversed absent a clear abuse of discretion that materially prejudices the objecting party." Rasalan v. TJX Operating Cos., Inc. (1998), 129 Ohio App.3d 364,369, citing State v. Hymore (1967), 9 Ohio St.2d 122,128. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
As to the first evidentiary issue, the record reveals the following:
 Q [by Mr. Bonetti, Fenwick's attorney]. Okay. Tell [the Court] what your agreement with Anthony regarding repayment of that $20,000 was.
A [by Fenwick]. Tony stated to me that —
 MS. NORRIS [Weaver's attorney]: Objection. That's hearsay. "Tony stated to me," that is hearsay.
THE COURT: I will sustain the objection.
* * *
 THE COURT: Now, just one second. I don't mind him stating his position on that. I don't want him to say what
Tony said. Do you understand?
MR. BONETTI: Yes
 Q. The question is, tell [the Court] what your agreement with Anthony was regarding the $20,000.
 A. That it would be paid back when the property was sold.
Q. Okay. Was there any interest?
A. No.
Q. Was there any other terms [sic] to that agreement?
 A. That if he died before the home was sold that nobody owed anything.
 Q. What do you mean; you would not have to repay the money?
A. Right.
Q. Did you ever hear Tony say that?
A. Yes, I did.
In its ruling, the trial court stated that it did not believe that such an agreement existed between Fenwick and Anthony Santillo.
This Court concludes that the trial court did not commit reversible error by excluding the direct statements by Anthony Santillo. The trial court permitted Fenwick to testify as to the substance of the agreement. Because the trial court had the substance of the agreement before it, Fenwick was not prejudiced by not being allowed to testify as to Anthony Santillo's specific words on the matter.
As to the second evidentiary issue, the record discloses that Fenwick sought to introduce into evidence testimony by Anthony Santillo from a prior proceeding regarding a verbal agreement that would eliminate any debt owed on the properties upon Anthony's death. However, as the trial court noted, the context of the testimony indicates that Anthony was testifying as to an agreement between himself and his brother Nick, not to an agreement with Fenwick. The trial court had broad discretion to decide whether the existence of an oral agreement between Anthony and Nick was relevant to a determination of whether an oral agreement existed between Anthony and Fenwick. See Evid.R. 402. As such, this Court cannot say that the trial court abused its discretion by excluding the former testimony of Anthony as not relevant to the issues in the case.
The sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
DONNA J. CARR, FOR THE COURT
SLABY, P.J. and WHITMORE, J. CONCUR