OPINION
Defendant Susan S. DeLuca appeals the March 30, 2000 judgment of the Crawford County Court of Common Pleas, Probate Division declaring several pieces of jewelry to be the property of the estate of the late Mary Boyd Secrest.
Mary Secrest, a resident of Bucyrus, Ohio, passed away on August 3, 1996 following a protracted illness. Mrs. Secrest was survived by four of her children: defendant Susan DeLuca, Stephen Secrest, Michael Secrest, and David Secrest. Defendant resides in Rochester, New York; Stephen, Michael and David Secrest all reside in California.
In fall 1992, Mrs. Secrest was diagnosed with cancer, and her children began to make arrangements for her care and the eventually disposition of her property. Initially, defendant (a paralegal) and Stephen Secrest (a practicing attorney) were named as agents with powers-of-attorney to act for Mrs. Secrest, but in the fall of 1994 defendant's younger brother David (also an attorney) was named to serve as agent in place of the defendant.
On October of 1995, Mrs. Secrest's son (and defendant's brother) Richard passed away, and a funeral was held for him in Bucyrus, Ohio on October 24, 1995. Defendant learned of her replacement as Mrs. Secrest's agent at this funeral, and was disturbed by the news. On October 25, Mrs. Secrest apparently discussed the changes with the defendant, and also presented or displayed eleven pieces of family jewelry to the defendant. Mrs. Secrest explained the family significance of each piece of jewelry as she handed them to the defendant. Defendant asserts her mother gave her each of the eleven pieces of jewelry and said, "[t]his is yours. I'm giving it to you. I want you to have it." Defendant also states that she accepted all eleven pieces of jewelry, but that she left them at Mrs. Secrest's home in Bucyrus because she was about to travel to Cleveland for several days to watch the World Series and believed that she would have no safe place to store them. However, defendant did not return to pick up the jewelry after the World Series; in fact, she did not return to Bucyrus until the following summer.
On June 26, 1996, defendant learned that her mother was hospitalized and critically ill, and traveled to Ohio from her home in New York. Stephen Secrest also traveled to Ohio, and both he and defendant stayed in Ohio for approximately one week to make healthcare and other arrangements for Mrs. Secrest. Shortly before Mrs. Secrest returned home from the hospital, Stephen discussed the jewelry with the defendant, and apparently agreed that their mother wanted the defendant to have the jewelry. On July 5, 1996, shortly before the defendant left to return to Rochester, New York, Stephen Secrest handed her an envelope containing the four pieces of jewelry that are the subject of this action: an emerald-cut diamond ring, a tanzanite ring, a citrine ring, and a diamond watch. He retained seven other pieces of jewelry, which he mailed to an appraiser in Rochester, New York on July 10, 1996.
At trial, defendant testified that Stephen Secrest had told her that he had given her the four pieces of jewelry because they "are pieces of jewelry that [he was] sure that mother wanted you to have prior to her death outside of her estate." See Transcript, at * * 160-61. On the other hand, Stephen Secrest testified that he had only given the four pieces of jewelry to the defendant to have them appraised. He stated that he believed them to be the most valuable pieces in his mother's collection, and that defendant's husband David (a licensed attorney) had "offered to take the jewelry to a jeweler in Rochester that we all knew and have it appraised." Id. at *39.
Over the course of the next few months, letters were exchanged and a dispute arose over whether the four pieces of jewelry were intended to be a gift from Mrs. Secrest's estate to the defendant, or had merely been entrusted to the defendant for safekeeping and appraisal. On August 3, 1996, Mary Secrest died, but her children have been unable to settle several disputes regarding her property, including this one. On April 23, 1997, Mrs. Secrest's estate filed a complaint in the Common Pleas Court of Crawford County, Probate Division, and requested a declaration that the four pieces of jewelry received by the defendant on July 5, 1996 were the property of the estate. A bench trial was held on July 8, 1998, and on March 30, 2000, the trial court entered a judgment holding that the jewelry was the property of the estate and was not the personal property of the defendant. Defendant now appeals, and asserts three assignments of error with the trial court's judgment.
 The lower court's judgment was prejudicially affected by improperly admitted settlement negotiations.
 The lower court improperly imposed a higher standard of proof upon the defendant based on her education and her marriage to an attorney.
 Sufficient proof was offered to establish the gift of the four pieces of jewelry under the proper standard.
 Defendant's assigned errors raise related issues in this case, therefore this Court will address them together. The sole issue in this case is the classification of the four pieces of jewelry — plaintiff argues that Mrs. Secrest intended to keep the jewelry in her estate (where it would ultimately pass to the defendant), while defendant contends that the jewelry was given to her by on October 25, 1995 by the decedent, and again on July 5, 1996 by her brother Steven Secrest.
 A gift is a voluntary transfer of property from one to another without any consideration or compensation therefor. A gift causa mortis is a gift of personality, made by a party in contemplation of the approach of death, but there is a defeasance of the gift if the danger of death passes without the donor dying, or if, before death, the donor revokes the gift, or the donee dies before the donor. A gift inter vivos is a donation between living persons, and it is an act such that the donor divests himself at present, and irrevocably, in favor of the donee, who accepts it.
 Saba v. Cleveland Trust Co. (1926), 23 Ohio App. 163, 165. There are three general elements to a gift: (1) intent of the donor to make a gift, (2) delivery of the property to the donee, and (3) acceptance of the gift by the donee. See, e.g., Barkley v. Barkley (1997), 119 Ohio App.3d 155, 171 at fn. 3, citing Bolles v. Toledo Trust Co. (1936), 132 Ohio St. 21. Generally, clear and convincing evidence is required to prove the existence of a gift. See In Re Estate of Fife v. Beck
(1956), 164 Ohio St. 449, 456. Plaintiff has not argued that the alleged gift was revoked, so the distinction between gifts causa mortis and gifts inter vivos is not controlling here. Cf. Becker v. Cleveland Trust Co. (1941), 68 Ohio App. 526, 529-30. Rather, as to the gift allegedly made October 25, 1995, the question is whether the element of delivery was satisfied, and as to the gift allegedly made July 5, 1996, the question is whether the element of intent was satisfied. As the evidence is clearly controverted on both questions, so long as the trial court's determination is supported by evidence legally sufficient to meet the clear and convincing standard of proof it would normally be within that court's discretion to determine whether or not the gift has been established.
However, there is another issue that complicates this decision. In an action to enforce a gift, the burden of proving the elements of the gift falls upon the donee. See, e.g., Smith v. Shafer
(1993), 89 Ohio App.3d 181, 183. However, defendant argues that in this case the burden was improperly placed upon her, and should have instead been placed on the Estate, which was the party seeking the declaratory judgment.
The Ohio Supreme Court dealt with a similar claim in the case of In Re Estate of Fife v. Beck (1956), 164 Ohio St. 449. In that case, the plaintiff estate brought an action under R.C. 2109.50
for discovery of concealed stock certificates that were alleged to be the property of the estate. The defendant argued that the stock certificates had been given to her by the decedent as aninter vivos gift. The Court held that once the plaintiff presented a prima facie case for inclusion of the stock certificates in the estate, the burden shifted to the defendant to prove that they had passed to her as a gift.
 [W]hen it was shown in this proceeding that the certificates of stock in dispute had been issued to the decedent in his name and that no transfer of such certificates had been registered upon the books of the corporations, a prima facie case was made for the inclusion of such certificates as assets of the estate. [Defendant] claimed the certificates as an inter vivos gift from the decedent, and it was incumbent on her to rebut and overcome the prima facie case by proving the essential elements of a completed gift.
 Id. at 455. We believe the present case is analogous and falls within the rule of Fife's Estate. Accordingly, the plaintiff had the burden of establishing a prima facie case for inclusion of the jewelry within the Estate, and once that burden was met, the burden shifted to the defendant to establish that she had received the jewelry as a gift, either on October 25, 1996 from her mother or on July 5, 1997 from her mother's agent Stephen Secrest.
We have little trouble concluding that the trial court correctly determined that the Estate presented a prima facie claim of ownership of the jewelry. It is undisputed that all eleven pieces of jewelry remained in possession of the decedent until July 5, 1997, and that even after that date only four pieces were in the possession of the defendant. Moreover, both Stephen Secrest's testimony and the deposition of David Secrest contain evidence that tends to show that the jewelry was the property of the decedent's estate. See, e.g., Transcript at * * 41; Deposition of David S. Secrest at *13. Accordingly, we believe the trial court correctly recognized that it was ultimately the defendant's burden to establish that she had received the jewelry as a gift. See Judgment Entry at * * 2-3.
Defendant first argues that her mother gifted the items to her on October 25, 1995. The trial court concluded that the alleged gift failed for two reasons. First, because defendant did not claim the jewelry from Mrs. Secrest's home for nearly a year, the court held that there had been no "delivery." Second, the court held that defendant had not sustained her burden of proof that delivery had occurred, because her only evidence of delivery was her own testimony.
 There was no independent objective evidence presented to manifest the decedent's intent, but only the self-serving declarations of the defendant. * * * * Although the defendant may not have wanted to risk traveling elsewhere with these items of jewelry, her husband did not join her in this additional travel, but returned directly to their home, and could have assumed responsibility for the safe delivery for her. Being there is an absence [of] any credible direct objective evidence to the contrary, the only reasonable inference or conclusion that can be drawn from these circumstances is that there was no gift consummated on October 25, 1995, because the jewelry remained in the dominion, control and possession of the decedent.
 Id. at *3 (emphasis added). The only evidence on the element of delivery was the defendant's testimony, which the trial court apparently determined was not credible and was in any event directly rebutted by the fact that the jewelry remained in the possession of the decedent. Given that it is the defendant's burden to establish the elements of the gift by clear and convincing evidence, see, e.g., Smith v. Shafer, 89 Ohio App.3d at 183, we cannot say the trial court erred by concluding that the defendant failed to meet that burden. See id. See also 52 Ohio Jurisprudence 3d (1997), Gifts, Section 15 (retention of dominion and control over gift generally sufficient to make gift ineffective).
Defendant has also claimed that the jewelry was gifted to her by her mother's agent Stephen Secrest on July 5, 1997. At trial, Stephen Secrest vehemently disputed this allegation. See, e.g.,
Transcript at *41 and 47-52. In reviewing this evidence, the trial court stated:
 It should be remembered that the burden of proof is upon the person claiming to be the donee. This Court is amazed that the three parties to the transaction on July 5, 1996, all had legal training, but yet no receipt, memorandum or letter of understanding was ever prepared. Clearly the Court finds that there was not a meeting of the minds and mutual understanding to the transaction. Indeed, there were two equally opposed unilateral understandings.
 Judgment Entry, at *5-6. Based on the foregoing, defendant contends that the trial court imposed a higher standard of proof on the defendant based on her paralegal education and her marriage to an attorney. We disagree. First, neither the record nor the trial court's judgment entry indicate that defendant was subject to a heightened standard of proof. Rather, the judgment entry merely notes that the trial court was "amazed" that "[all] three parties [Steven Secrest, the defendant, and her husband] to the transaction on July 5, 1996" had some sort of legal training, yet not one of them thought to memorialize the transaction. The court further noted that it was the defendant's burden to establish donative intent, and that because "the testimony of the transaction is quite controverted" and there are "two equally opposed unilateral understandings as to the nature of the transaction, she has failed to meet that burden. The trial court's mention of a "receipt, memorandum or letter of understanding" merely describes one way in which defendant could have met her burden. Moreover, the court's statement places equal blame on Mr. Secrest, who has consistently maintained that he gave the jewelry to defendant to have it appraised. Mr. Secrest's story could also have been corroborated by documentary evidence, but as the court noted, no such evidence existed. Defendant has argued, both at trial and on appeal, that Steven Secrest's version of events is a calculated lie. In the absence of documentary evidence supporting her version of events, we cannot say that the trial court erred by concluding that that the she had not established this allegation.
Defendant also contends that the trial court's decision was based upon an inadmissible offer of settlement. See generally Evid.R. 408. We have reviewed the two letters in question, and are frankly not convinced that they were intended to be offers of settlement. Rather, each of the documents is merely a set of directions from defendant's legal counsel to gift all eleven pieced of jewelry in equal shares to the decedent's five grandchildren under the Uniform Gifts to Minors Act. Nowhere in either document is there any indication of a dispute over the jewelry between the parties or possible litigation as a result of that dispute. Cf. Atkinson v. International Technegroup, Inc.
(1995), 106 Ohio App.3d 349, 364; South v. Toledo Edison Co.
(1986), 32 Ohio App.3d 24, 28-9 (defining what constitutes an offer of compromise). We therefore cannot conclude that Defendant has clearly established that the letters to be inadmissible. See generally Rasalan v. TJX Operating Cos., Inc. (1998), 129 Ohio App.3d 364,369. Moreover, it is not completely clear that this evidence had any effect on the trial court's decision. See Judgment Entry at *5. Finally, even if the two letters are completely disregarded the defendant has still failed to "clearly establish" delivery of the gift on the first occasion, and has similarly failed to "clearly establish" an intent to gift the jewelry on the second occasion. Thus, even assuming that the documents were inadmissible, we do not believe that they prejudicially affected the defendant in any way. See id. We therefore cannot conclude that the trial court's decision was so arbitrary and unreasonable as to constitute an abuse of its broad discretion over evidentiary matters. See id.
Because the testimony presented to the trial court was split on virtually every relevant issue, whether or not the defendant met her burden boils down to a question of credibility. Such questions are universally accepted to be within the discretion of the trial court, and the defendant has failed to show any abuse of that discretion. For the foregoing reasons, defendant's three assigned errors are overruled. The judgment of the Common Pleas Court of Crawford County, Probate Division, is hereby affirmed.
HADLEY, P.J. and WALTERS, concur.