OPINION
{¶ 1} Plaintiff-appellant, Jamila Shivers, appeals from a judgment of the Ohio Court of Claims in favor of defendant-appellee, University of Cincinnati ("the university"). Because the trial court improperly admitted the testimony of the university's expert witness, we reverse.
{¶ 2} In February 1998, plaintiff was a student at the university and a resident of Daniels Hall, a co-ed dormitory that the university operated. With the exception of one floor, each floor in Daniels Hall housed both male and female students. Each co-ed floor had one communal bathroom for male students and a separate communal bathroom for female students. In the late evening on February 26, 1998, plaintiff was raped while she was taking a shower in the women's bathroom located on the twelfth floor of Daniels Hall. Plaintiff's assailant has never been apprehended.
{¶ 3} On February 22, 2000, plaintiff filed a complaint against the university, alleging her rape was the direct and proximate result of the university's negligent security system. In April 2001, the trial court conducted a bifurcated trial to determine the issue of liability. At trial, plaintiff maintained the university did not exercise reasonable care because it did not provide locks on either the exterior bathroom door or the shower door and inconsistently administered existing security procedures.
{¶ 4} On March 4, 2002, the trial court rendered judgment in favor of the university. Plaintiff appeals, assigning three errors:
{¶ 5} "First Assignment of Error
{¶ 6} "THE COURT OF CLAIMS' DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
{¶ 7} "Second Assignment of Error
{¶ 8} "THE COURT OF CLAIMS INCORRECTLY APPLIED THE LAW IN REACHING ITS DECISION.
{¶ 9} "Third Assignment of Error
{¶ 10} "THE COURT OF CLAIMS IMPROPERLY PERMITTED THE TESTIMONY OF THE UNIVERSITY'S EXPERT WITNESS."
{¶ 11} We begin our analysis with plaintiff's third assignment of error because it is dispositive.
{¶ 12} "The admission or exclusion of expert testimony is within the sound discretion of the trial court, and will not be reversed absent an abuse of that discretion. * * * An abuse of discretion connotes an arbitrary, capricious or unconscionable decision by the trial court." Swift v. Allied Pest Control (Aug. 31, 2001), Montgomery App. No. 18311. (Citations omitted.) However, "every opinion, whether by an expert or lay person, must have a proper foundation [the factual basis of the conclusion] to be admissible." State v. President (Apr. 21, 1993), Lorain App. No. 92CA005408, dismissed, jurisdictional motion overruled,67 Ohio St.3d 1464, certiorari denied (1994), 511 U.S. 1071,114 S.Ct. 1649, citing Columbus v. Bosley (App. 1954), 73 Ohio Law Abs. 185, 187.
{¶ 13} Evid.R. 703 provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." See, also, State v. Chapin (1981), 67 Ohio St.2d 437, paragraph two of the syllabus, approving and following Kraner v. Coastal Tank Lines (1971),26 Ohio St.2d 59; State v. Jones (1984), 9 Ohio St.3d 123, syllabus, following Chapin, supra.
{¶ 14} "This evidentiary principle has been refined and interpreted by Ohio courts to mean that the requirements of Evid.R. 703 are met if an expert's opinion is based in whole, or in major part, upon data which he has perceived and which has been admitted into evidence in the case." Harmon v. Allen (Aug. 23, 2001), Cuyahoga App. No. 78349. (Emphasis sic.) See State v. Solomon (1991), 59 Ohio St.3d 124, syllabus ("Where an expert bases his opinion, in whole or in major part, on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied"). See, also, State v. Gulertekin (Dec. 3, 1998), Franklin App. No. 97APA12-1607, dismissed, appeal not allowed (1999),85 Ohio St.3d 1455 (discussion of relaxation of evidentiary requirements of Evid.R. 703).
{¶ 15} Here, plaintiff contends the university's expert improperly based his opinion on conversations with the head of residence life and the university chief of police. Because no facts concerning the content of those conversations were admitted into evidence, plaintiff argues the foundation of the expert's opinion was inadmissible hearsay and the trial court should have struck his opinion pursuant to Evid.R. 703. See, also, Evid.R. 802 (hearsay rule).
{¶ 16} On direct examination, the university's expert testified he "got a feel" for the Daniels Hall security system by "getting a copy of the diagram of the residence hall, talking to the head of the residence life, the chief of police on the campus, and looking at the crime statistics for the residence hall[.]" (Tr. 352-353.) After plaintiff objected to the expert's opinion due to a lack of a proper foundation, the trial court reserved judgment on its admissibility. At the same time, the trial court admonished the university that, without testimony supporting the "hall monitors and all the other stuff" the expert considered, the court would "sustain the objection and you're not going to have an opinion." (Tr. 362.) With that admonition, counsel for the university inquired:
{¶ 17} "Q. I'm going to back up here a little bit, sir.
{¶ 18} "Do you have an opinion about the security of Daniels Hall absent the presence of the dormitory and hall monitors?
{¶ 19} "A. Absent that, I still believe that the security system — security program in place for Daniels Hall was adequate and reasonable.
{¶ 20} "Q. Thank you." (Tr. 362-363.)
{¶ 21} In spite of the university's efforts to rehabilitate its expert witness, the university's question only clarified that its expert did not consider dormitory or hall monitors in reaching his opinion. Counsel's question did nothing to change the earlier testimony of the expert that he "got a feel" for Daniels Hall security by, in part, "getting a copy of the diagram of the residence hall, talking to the head of the residence life, the chief of police on the campus, and looking at the crime statistics for the residence hall[.]" (Tr. 352-353.)
{¶ 22} Near the close of direct examination, the university's expert admitted he had not visited Daniels Hall, but offered that he did not need to visit it in order to render an opinion about the safety measures the university employed in the hall. Rather, he testified that "[b]etween that material [sent to him] and conversations, again, with the residence hall director and chief, yes, I got an understanding." (Tr. 369.)
{¶ 23} In contrast to the direct testimony of defendant's expert that he "got a feel" and an "understanding" for the university's security system partly through conversations with the residence hall director and the campus chief of police, on cross-examination defendant's expert expressly admitted he based his opinion on those conversations: "Well, I based the opinion on my conversations with the head of the residence halls, the chief of police, looking at the diagram of the residence hall, evaluating the system that was in place, whether the halls are patrolled by resident staff and the police and the like. So I evaluated it on the programs that were in place from the diagram and from the interviews." (Tr. 396-397.) The university did not conduct any redirect examination of its expert witness.
{¶ 24} The record thus reflects that the university's expert explicitly testified he based his opinion on his interviews with the head of the residence halls and the campus chief of police. Neither the head of residence halls nor the campus chief of police testified at trial, and no deposition testimony concerning their conversations with defendant's expert was admitted at trial. As a result, the university's expert based his opinion on facts or data not admitted at trial. Moreover, the university's expert admitted he did not visit Daniels Hall prior to rendering his opinion, so his opinion could not have been based in whole, or in major part, on facts or data perceived by him.
{¶ 25} Because the record demonstrates the university's expert based his opinion in significant part on facts not in evidence or on facts or data he did not perceive, the university failed to establish a proper foundation for admitting its expert's opinion pursuant to Evid.R. 703 and 705. See State v. Hinkle (Aug. 23, 1996), Portage App. No. 95-P-0069, quoting State v. Simpson (Sept. 30, 1994), Lake App. No. 93-L-014, dismissed, appeal not allowed (1995), 71 Ohio St.3d 1477 ("to be admissible as opinion testimony of an expert witness, Evid.R. 703 and 705 require that a proper foundation be laid and the opinion must have the proper evidentiary basis").
{¶ 26} Accordingly, the opinion of the university's expert should have been excluded for lack of a proper foundation under Evid.R. 703. Because the trial court relied on the expert's opinion in determining the issue of the university's liability, the trial court erred. See, e.g., Rasalan v. TJX Operating Cos., Inc. (1998), 129 Ohio App.3d 364, 370, appeal not allowed, 84 Ohio St.3d 1450, citing Kraner at 60 ("a trial court's admission of an expert's opinion, over an objection, that it is not based on personal knowledge or facts shown by the evidence becomes prejudicial error when substantial emphasis was placed upon that opinion in establishing the plaintiff's case").
{¶ 27} Plaintiff's third assignment of error is sustained, rendering moot her first and second assignments of error. Having sustained plaintiff's third assignment of error, we reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.
Judgment reversed and case remanded.
PETREE and BROWN, JJ., concur.