[Cite as *McKettrick v. McKettrick*, 2015-Ohio-366.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| JENNIFER MCKETTRICK, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2014-05-076 |
| | : | O P I N I O N |
| - vs - | | 2/2/2015 |
| | : | |
| CHERYL MCKETTRICK, | : | |
| Defendant-Appellee. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 13 DR 36810

Michael J. Davis, 8567 Mason Montgomery Road, P.O. Box 1025, Mason, Ohio 45040, for plaintiff-appellant

John S. Mengle, 42 East Silver Street, Lebanon, Ohio 45036, for defendant-appellee

**HENDRICKSON, J.**

{¶ 1}  Plaintiff-appellant, Jennifer McKettrick, appeals from the decision of the Warren County Court of Common Pleas, Domestic Relations Division, dismissing her complaint for divorce against defendant-appellee, Cheryl McKettrick.  For the reasons set forth below, we hereby affirm the decision of the trial court.

{¶ 2}  Between June 1998 and March 2012, Jennifer and Cheryl lived together in

Mason, Ohio as cohabiting, same sex partners. In either December 2005 or January 2006, Cheryl purchased a house in Eastham, Massachusetts. In April 2006, after a small ceremony at the Eastham house, Jennifer and Cheryl were issued a certificate of marriage by the Commonwealth of Massachusetts ("the 2006 marriage"). Although they vacationed in Eastham for between two and four weeks each year from 2006 to 2012, both Jennifer and Cheryl continued to maintain their home – and their respective positions of employment, voter registrations, and driver's licenses – in Ohio.

{¶ 3} In November 2013, Jennifer filed the complaint for divorce that serves as the basis for this appeal. Cheryl moved to dismiss Jennifer's complaint for lack of jurisdiction on the ground that "their purported marriage in Massachusetts was and is void." Jennifer then amended her complaint to allege that the couple's marriage in Massachusetts was lawful, to which Cheryl responded by supplementing her motion to dismiss. Thereafter, the parties submitted evidence by way of depositions, and provided argument through memoranda in support of their respective positions.

{¶ 4} On May 6, 2014, after reviewing the evidence and the parties' memoranda, the trial court granted Cheryl's motion to dismiss. In so holding, the trial court observed that the relevant Massachusetts law in effect in 2006 provided that:

> No marriage shall be contracted in this commonwealth by a party residing in and intending to continue to reside in another jurisdiction if such marriage would be void if contracted in such other jurisdiction, and every marriage contracted in this commonwealth in violation hereof shall be null and void.

Mass.Gen.Laws.Ann. 207, Sec. 11 ("Mass.207-11").[1]

{¶ 5} Applying this law, the trial court determined Jennifer and Cheryl intended to continue to reside in Ohio after their marriage, that same sex marriages were prohibited in

---

1. Mass.207-11 was repealed by Mass. Senate No. S800, Sec. 1 (2008).

Ohio in 2006, and that the Ohio laws prohibiting same sex marriage in 2006 were not unconstitutional. Therefore, the trial court concluded that the 2006 marriage was void, and dismissed Jennifer's complaint.

{¶ 6} Jennifer now appeals from the trial court's decision granting Cheryl's motion to dismiss, raising one assignment of error:

{¶ 7} THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING APPELLEE'S MOTION TO DISMISS.

{¶ 8} In her single assignment of error, Jennifer alleges two principal grounds upon which the trial court erred in dismissing her complaint. First, Jennifer argues that Mass.207-11 was not applicable to the 2006 marriage. Second, Jennifer argues that even if Mass.207-11 was applicable, the Ohio laws prohibiting same sex marriage were unconstitutional, thereby rendering them void ab initio. Therefore, according to Jennifer, because the Ohio laws prohibiting same sex marriage were unconstitutional, such laws could not have served as an impediment to the validity of the 2006 marriage. We will address each of Jennifer's arguments in turn.

**1. Standard of Review**

{¶ 9} A motion to dismiss for lack of subject matter jurisdiction pursuant to Civ.R. 12(B)(1) requires a determination of whether the complaint raised a cause of action cognizable by the forum in which it was filed.[2] *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80 (1989). This determination involves a question of law that the appellate court reviews de novo, independently, and without deference to the trial court's decision. *Bla-Con Indus., Inc. v. Miami Univ.*, 12th Dist. Butler No. CA2006-06-127, 2007-Ohio-785, ¶ 7. In

---

2. Jennifer characterizes Cheryl's motion to dismiss as a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim. However, Cheryl's original motion is captioned "Motion to Dismiss for Lack of Jurisdiction," and her arguments in support of the motion deny the trial court has subject matter jurisdiction. Accordingly, we review the trial court's decision as involving a Civ.R. 12(B)(1) motion to dismiss for lack of subject matter jurisdiction.

determining whether the plaintiff has alleged a cause of action sufficient to withstand a Civ.R. 12(B)(1) motion to dismiss, a court is not confined to the allegations of the complaint and "it may consider material pertinent to such inquiry without converting the motion into one for summary judgment." *Southgate Dev. Corp. v. Columbia Gas Transmission Corp.*, 48 Ohio St.2d 211 (1976), paragraph one of the syllabus.

{¶ 10} Under Ohio law, the jurisdiction of the trial court in divorce cases is limited by statute. *In re A.G.*, 139 Ohio St.3d 572, 2014-Ohio-2597, ¶ 44. R.C. 3105.17 provides that a complaint for divorce may be filed by "[e]ither party to the marriage." Implicit within this provision is the principle that a valid marriage is an essential element of a cognizable complaint for divorce. *See, e.g., Brooks v. Brooks*, 12th Dist. Warren No. CA2000-08-079, 2001 WL 433376, *1 (Apr. 30, 2001) (affirming the trial court's dismissal, for lack of jurisdiction, of the plaintiff's complaint for divorce where the plaintiff failed to show the parties had a valid common law marriage). Thus, to survive the Civ.R. 12(B)(1) motion to dismiss in this case, Jennifer was required to show the existence of a valid marriage.

### 2. Validity of the Marriage Under Ohio Law

{¶ 11} Jennifer's contention that the trial court misapplied Mass.207-11 to the 2006 marriage is a key component of her broader claim that the trial court erred in granting Cheryl's motion to dismiss. Yet, after a thorough review of the record, we note that even if the 2006 marriage was valid under Massachusetts law, Jennifer's complaint would not present a cognizable complaint for divorce under Ohio law.

{¶ 12} "Generally, the validity of a marriage is determined by the *lex loci contractus*; if the marriage is valid where solemnized, it is valid elsewhere * * *." (Emphasis sic.) *Mazzolini v. Mazzolini*, 168 Ohio St. 357 (1958), paragraph one of the syllabus. However, this rule does not apply where the marriages are "incestuous, polygamous, shocking to good morals, unalterably opposed to a well defined public policy, or prohibited." *Id.* at 358. To that end,

- 4 -

R.C. 3101.01(C) provides:

> (1) Any marriage between persons of the same sex is against the strong public policy of this state. Any marriage between persons of the same sex shall have no legal force or effect in this state * * *.

> (2) Any marriage entered into by persons of the same sex in any other jurisdiction shall be considered and treated in all respects as having no legal force or effect in this state and shall not be recognized by this state.

*See also* Article XV, Section 11 of the Ohio Constitution ("[o]nly a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions").

{¶ 13} As can be seen, with respect to purported marriages of persons of the same sex, Ohio law does not look to the "lex loci contractus" to determine the validity of the marriage. Rather, Ohio law provides that *all* purported marriages of persons of the same sex, regardless of *where* the marriage is purported to have occurred, are invalid. *See DeBoer v. Snyder*, 772 F.3d 388, 419-420 (6th Cir.2014). Therefore, regardless of whether Massachusetts law recognized the 2006 marriage, that marriage is invalid under Ohio law. Where Ohio law does not recognize a valid marriage, the trial court has no jurisdiction to entertain a complaint for divorce. *See Brooks*, 2001 WL 433376 at *1.

### 3. Validity of the Marriage Under Massachusetts Law

{¶ 14} In addition, just as the trial court held, we find the 2006 marriage was invalid under Massachusetts law. As it operated in 2006, Mass.207-11 invalidated the marriage of nonresidents of Massachusetts only if three conditions were present: (1) the parties were residing in another state (i.e., not Massachusetts), (2) the parties intended to continue to reside in that other state, and (3) the marriage was invalid in that other state.

{¶ 15} Jennifer argues that two of the three conditions were not present in the 2006 marriage. First, Jennifer contends that although she and Cheryl were domiciled in Ohio at

the time of their marriage, they were nevertheless residents of Massachusetts and not residing in another state. That is, because she and Cheryl owned a house – a residence – in Massachusetts in 2006, Jennifer claims they were also Massachusetts "residents" under the plain meaning of that term. Further, Jennifer claims she and Cheryl did not intend to continue to reside in another state because they had expressed their intent to retire to Massachusetts in the future. Thus, Jennifer contends that Mass.207-11 was not applicable to the 2006 marriage.

{¶ 16} However, Jennifer's interpretation of Mass.207-11 is at odds with Massachusetts precedent. Her argument that Mass.207-11 was inapplicable to the 2006 marriage hinges on the distinction between the terms "residence" and "domicile," and the notion that a person may have more than one residence. Yet, a Massachusetts Supreme Judicial Court decision indicates Jennifer misstates and misinterprets the meaning of those terms in the context of Mass.207-11:

> When a person domiciled in another State comes to Massachusetts with the intent to marry, that person's ability to enter into a valid marriage contract, in the first instance, is governed by [Mass.207-11], which, in turn, mandate[s] that the Commonwealth look to the marriage laws of the person's domiciliary State.

*Cote-Whitacre v. Dept. of Pub. Health*, 446 Mass. 350, 359 (2006). In other words, according to the Massachusetts Supreme Judicial Court, the words "residing" and "intending to continue to reside" as used in Mass.207-11 do not connote the plain meaning of the term "residence," but instead signify the concept of "domicile." *See Levanosky v. Levanosky*, 311 Mass. 638, 641 (1942) (interpreting the same language in Mass.Gen.Laws.Ann. 207, Sec. 10).

{¶ 17} Under Massachusetts law, a person can only have one domicile. *Dane v. Bd. of Registrars of Voters of Concord*, 374 Mass. 152, 161 (1978). A person's domicile is the

place that one calls "home," and "'[h]ome is the place where a person dwells and which is the center of his domestic, social, and civil life.'" *Id.* at 161-62, quoting Restatement of the Law 2d, Conflict of Laws, Sec. 12 (1971). In her brief to this court, Jennifer concedes that "at the time of the issuance of the marriage license, the parties had their domicile in Ohio." Moreover, Jennifer cannot point to anything in the record which shows that either she or Cheryl had any definite intention of changing their domicile after they were issued a marriage certificate. Therefore, Mass.207-11 *was* applicable to the 2006 marriage.

{¶ 18} Further, Mass.207-11 operated to render the 2006 marriage void. Under that provision, the 2006 marriage was invalid at the time it was entered into if same sex marriage was explicitly deemed void or otherwise prohibited by Ohio constitutional amendment, by Ohio statute, or by an Ohio Supreme Court decision. *See Cote-Whitacre v. Dept. of Pub. Health*, Suffolk No. CIV.A. 04-2656, 2006 WL 3208758, *4 (Mass.Super. Sept. 29, 2006) (applying the Massachusetts Supreme Judicial Court's earlier interpretation of Mass.207-11). As noted above, same sex marriage was prohibited by an amendment to the Ohio Constitution (Article XV, Section 11) *and* an Ohio statute (R.C. 3101.01(C)), both of which were in effect in 2006. Thus, under Massachusetts law, as under Ohio law, the 2006 marriage was invalid.

### 4. Constitutionality of Ohio's Laws Regarding Same Sex Marriage

{¶ 19} Lastly, Jennifer argues the laws prohibiting same sex marriage in Ohio are unconstitutional. Specifically, Jennifer contends that R.C. 3101.01(C) and Article XV, Section 11 of the Ohio Constitution (collectively, "the Ohio same sex marriage provisions") violate her due process and equal protection rights under the Fourteenth Amendment of the United States Constitution.[3] She further contends that because these provisions are

---

3. Jennifer also alleges violations of the Establishment Clause of the First Amendment, freedom of association as guaranteed by the First Amendment, and the Supremacy Clause of Article VI. However, we decline to

unconstitutional, they were void ab initio and could not have served as impediments to the 2006 marriage.

{¶ 20} As a primary authority for her constitutional arguments, Jennifer cites *Obergefell v. Wymyslo*, 962 F. Supp.2d 968 (S.D.Ohio 2013). She asserts that the *Obergefell* court's reasoning, "applied to the facts of this case, should compel the same conclusion – Ohio's [same sex marriage provisions] unjustifiably violate due process and equal protection guarantees." We find Jennifer's position problematic for several reasons.

{¶ 21} First, "Ohio appellate courts are not bound by lower federal court opinions." *Huntington Natl. Bank v. Coffman*, 10th Dist. Franklin No. 14AP-231, 2014-Ohio-3743, ¶ 17, citing *State v. Burnett*, 93 Ohio St.3d 419, 423-24 (2001). It is well-settled that the Supremacy Clause in Article VI of the United States Constitution "binds state courts to decisions of the United States Supreme Court on questions of federal statutory and constitutional law." *Burnett* at 422. However, the decisions of lower federal courts "constitute persuasive authority only and are not binding on this court." *State v. Prom*, 12th Dist. Butler No. CA2004-07-174, 2005-Ohio-2272, ¶ 22. Therefore, even if *Obergefell* represented the controlling federal authority in this jurisdiction, we would not be bound by its holding.

{¶ 22} Second, the *Obergefell* holding is inapposite to the present case. In *Obergefell*, the plaintiff and his homosexual partner were married in 2013 in Maryland, a state that recognizes same sex marriages as valid. *Obergefell* at 976. After the death of his partner that same year, the plaintiff sought an injunction from the federal district court requiring the state of Ohio to issue a death certificate that accurately reflected the Maryland marriage. *Id.* In finding for the plaintiff, the *Obergefell* court was very clear about the limited scope of its ruling:

consider these allegations because she failed to provide supporting arguments or citations to supporting authority. *See* App.R. 16(A)(7); App.R. 12(A)(2).

> The Court's ruling today * * * states simply, that under the Constitution of the United States, Ohio must recognize *valid* out-of-state marriages between same-sex couples on Ohio death certificates * * *.

(Emphasis added.) *Id.* at 973. Apart from the issue of the authority of *Obergefell*, then, there is also the issue of relevance. *Obergefell* sought to force Ohio to recognize *valid* same sex marriages performed in other jurisdictions. As discussed above, however, the 2006 marriage was not valid under either Massachusetts or Ohio law.

{¶ 24} Third, we note that in the interim between the filing of Jennifer's brief and this court's consideration of the matter, the United States Court of Appeals for the Sixth Circuit issued its decision in *DeBoer v. Snyder*, 772 F.3d 388 (6th Cir.2014). *DeBoer* reversed *Obergefell* and several other federal district court rulings from Kentucky, Ohio, Michigan, and Tennessee favorable to advocates of same sex marriage. *Id.* at 421. In so doing, the Sixth Circuit found, among other things, that Ohio's same sex marriage provisions did not violate either the due process clause or the equal protection clause of the Fourteenth Amendment. *Id.* at 404-08, 410-16. Although *DeBoer* is not binding on this court, we agree with its reasoning.

{¶ 25} Finally, we decline Jennifer's invitation to find the Ohio same sex marriage provisions could not have served as an impediment to the 2006 marriage. In effect, Jennifer is asking this court to make three distinct rulings. First, to declare that the Ohio same sex marriage provisions are unconstitutional. Second, to retroactively apply our decision to nullify the effect of those provisions in 2006. And third, to re-apply Massachusetts law in light of our retroactive nullification. Even if we were inclined to take the first step – which we are not – we are powerless to take the second.

{¶ 26} The general rule is that a decision of a court of *supreme jurisdiction* striking down a statue as unconstitutional is retrospective in its operation. *Wendell v. AmeriTrust*

*Co.*, 69 Ohio St.3d 74, 77 (1994), citing *Peerless Elec. Co. v. Bowers*, 164 Ohio St. 209, 209 (1955). However, no such decision exists with respect to Ohio's same sex marriage provisions, and a decision by this court would not constitute a decision of a court of supreme jurisdiction. Because neither the Ohio Supreme Court nor the United States Supreme Court have spoken on the issue, we decline to retroactively nullify the Ohio same sex marriage provisions.[4] *See, e.g., United States v. Windsor*, __ U.S. __,133 S.Ct. 2675, 2696 (2013) (Roberts, C.J., dissenting) ("[t]he Court does not have before it, and the logic of the opinion does not decide, the distinct question whether the States, in the exercise of their 'historic and essential authority to define the marital relation' * * * may continue to utilize the traditional definition of marriage").

{¶ 27} For the foregoing reasons, having found no merit to any of the arguments advanced herein, Jennifer's single assignment of error is overruled.

{¶ 28} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.

---

4. Notably, the United States Supreme Court recently granted certiorari in a related case on the following questions: (1) Does the Fourteenth Amendment require a state to license a marriage between two people of the same sex?; and (2) Does the Fourteenth Amendment require a state to recognize a marriage between two people of the same sex when their marriage was lawfully licensed and performed out-of-state? *Bourke v. Beshear*, 83 U.S.L.W. 3315, 2015 WL 213651, *1 (Jan. 16, 2015). The final briefs in *Bourke* are due on April 17, 2015. *Id.*