[Cite as *Paramount Farms Intl., L.L.C. v. Ventilex B.V.*, 2016-Ohio-1150.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| PARAMOUNT FARMS INTERNATIONAL, LLC, | : | CASE NO. CA2015-02-029 |
| | : | |
| Plaintiff-Appellant | : | O P I N I O N |
| | : | 3/21/2016 |
| - vs - | : | |
| | : | |
| VENTILEX B.V., | : | |
| Defendant-Appellee. | : | |
| | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV12-02-0854

Millikin & Fitton Law Firm, Steven A. Tooman and Thomas A. Dierling, 9032 Union Centre Blvd., Suite 200, West Chester, Ohio 45069, for plaintiff-appellant

Adam P. Zaffos, 11444 West Olympic Blvd., 10th Floor, Los Angeles, CA 90064, for plaintiff-appellant

Joseph S. Klapach, 8200 Wilshire Blvd., Suite 300, Beverly Hills, CA 90211, for plaintiff-appellant

Frost Brown Todd LLC, Scott D. Phillips and Thomas B. Allen, 9277 Centre Pointe Drive, Suite 300, West Chester, Ohio 45069, for defendant-appellee

Donald H. Chase, 909 Third Avenue, New York, New York 10022, for defendant-appellee

**M. POWELL, P.J.**

{¶ 1} Plaintiff-appellant, Paramount Farms International LLC ("Paramount Farms"),

appeals a decision of the Butler County Court of Common Pleas granting summary judgment to defendant-appellee, Ventilex B.V.

{¶ 2} Paramount Farms is a Delaware corporation that grows and processes almonds in California. Ventilex B.V. is a Dutch company that manufactures nut pasteurization systems and is the sole shareholder of Ventilex USA. Ventilex USA is a Delaware corporation with its principal place of business in Ohio.

{¶ 3} In response to concerns regarding a salmonella outbreak in 2004, the USDA notified the almond industry that it was planning to issue a rule requiring the pasteurization of all almonds sold within the United States. In order to comply with the impending regulations, Paramount Farms entered into a contract with Ventilex USA to purchase a pasteurization system. However, the pasteurization system subsequently failed to obtain government approval. As a result, Paramount Farms was forced to ship its almonds to processors with approved pasteurizers until such time as the Ventilex system could be replaced.

{¶ 4} In June 2008, Paramount Farms filed a notice of demand for arbitration against Ventilex USA and Ventilex B.V. pursuant to the terms of the contract. Paramount Farms alleged breach of contract, breach of warranty, and rescission. Ventilex B.V. claimed it was not a party to the contract and therefore could not be forced into arbitration. Paramount Farms subsequently commenced an action against Ventilex B.V. in the Federal District Court for the Eastern District of California and withdrew its arbitration demand against that company. The arbitration proceeded against Ventilex USA alone.

{¶ 5} In February 2010, a panel of three arbitrators ruled that Ventilex USA "breached its warranty to provide a pasteurization system that would obtain the necessary approvals and that it would work with Paramount [Farms] at its expense to correct the machine so it could obtain approval." The arbitration panel awarded Paramount Farms a judgment against Ventilex USA in excess of $5 million, including interest and costs. As a

result of the judgment, Ventilex USA filed for bankruptcy.

{¶ 6} In November 2010, Paramount Farms' federal action against Ventilex B.V. proceeded to trial in the Federal District Court for the Eastern District of California. Paramount Farms claimed that Ventilex B.V. had provided an express warranty regarding the Ventilex system and breached that warranty. Finding that the evidence indicated "either the express warranty wasn't made or it was not relied upon," the court entered judgment in favor of Ventilex B.V. The Ninth Circuit Court of Appeals affirmed the district court's decision.

{¶ 7} On February 29, 2012, Paramount Farms filed a complaint in the Butler County Court of Common Pleas alleging, inter alia, that Ventilex B.V. tortiously interfered with the contract between Paramount Farms and Ventilex USA. In March 2013, the trial court granted Ventilex B.V.'s motion for summary judgment on the ground that the judgment rendered in Paramount Farms' federal lawsuit was res judicata pursuant to California law. On appeal, we reversed and remanded, finding that Paramount Farms' tortious interference with contract claim was not barred by res judicata. *Paramount Farms Intl., L.L.C. v. Ventilex B.V.*, 12th Dist. Butler No. CA2013-04-060, 2014-Ohio-986, ¶ 29 (*Paramount Farms I*).

{¶ 8} On remand, Ventilex B.V. moved for summary judgment, arguing that as the parent company of Ventilex USA, it was privileged to interfere with its subsidiary's contract. On February 2, 2015, the trial court granted summary judgment to Ventilex B.V. on the ground that "[u]nder Ohio law, a parent company cannot be held liable for interfering with its subsidiary's contractual relationships." In support of its holding, the trial court solely relied on three federal decisions, *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597 (6th Cir.1988); *Kirk v. Shaw Environmental, Inc.*, N.D.Ohio No. 1:09-CV-1405, 2010 WL 1387887 (Mar. 31, 2010); and *ITS Fin., LLC v. Advent Fin. Servs., LLC*, 823 F.Supp.2d 772 (S.D.Ohio 2011).

{¶ 9} Paramount Farms appeals, raising one assignment of error.

**Ventilex B.V.'s Notice of Supplemental Authority**

{¶ 10} Before addressing Paramount Farms' assignment of error, we first address Ventilex B.V.'s notice of supplemental authority filed on December 28, 2015, and Paramount Farms' subsequent motion to strike. In its notice, Ventilex B.V. calls this court's attention to a decision of the Eighth Appellate District holding that "the tort of tortious interference with a business expectancy does not include tortious interference with the collection of a judgment." *See Coventry Group, Inc. v. Gottlieb*, 8th Dist. Cuyahoga No. 100056, 2014-Ohio-213.

{¶ 11} Paramount Farms is correct that the notice of supplemental authority is not proper under Loc.R. 11(E), which provides, in relevant part, that "[a]bsent exceptional circumstances, a notice of supplemental authority shall be filed only when counsel could not, with due diligence, have been aware of the additional authority at the time the brief was filed." The Eighth Appellate District issued *Coventry* on January 23, 2014, almost 19 months before Ventilex B.V. filed its brief on August 20, 2015. Ventilex B.V. does not argue there were exceptional circumstances and does not address why counsel was not aware of the decision at the time the brief was filed.

{¶ 12} Moreover, Ventilex B.V.'s notice of supplemental authority does not merely identify *Coventry* as additional authority. Rather, the notice asks us to consider *Coventry* as an "independent reason upon which to affirm the trial court." As Paramount Farms correctly notes, the notice improperly raises for the first time a "completely new ground as the purported basis for dismissing Paramount's interference claim." Ventilex B.V.'s notice of supplemental authority is accordingly stricken.

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF VENTILEX B.V. BECAUSE THE OHIO SUPREME COURT, THE OHIO APPELLATE COURTS, THE RESTATEMENT (SECOND) OF TORTS, AND THE

OVERWHELMING WEIGHT OF OUT-OF-STATE AUTHORITY ALL RECOGNIZE THAT A PARENT COMPANY CAN BE HELD LIABLE FOR INTERFERING WITH A SUBSIDIARY'S CONTRACT.

### The Issues on Appeal; Standard of Review

{¶ 15} Paramount Farms argues the trial court erred in granting summary judgment to Ventilex B.V. with regard to the intentional interference with contract claim. Specifically, Paramount Farms argues the trial court erred in holding "that a parent company is legally incapable of interfering with a subsidiary's contract," and in so holding, improperly ignored two decisions of the Ohio Supreme Court, failed to apply the multi-factor balancing test under the Restatement of the Law 2d, Torts, Section 767 (1979), and instead, mistakenly relied on the three federal decisions cited above. Paramount Farms also asserts the trial court erred in applying Ohio law and not California law.

{¶ 16} An appellate court reviews a trial court's decision on a motion for summary judgment de novo, independently and without deference to the decision of the trial court. *Flagstar Bank, FSB v. Sellers*, 12th Dist. Butler No. CA2009-11-287, 2010-Ohio-3951, ¶ 7. Summary judgment is proper when there is no genuine issue of material fact remaining for trial, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion adverse to the nonmoving party, construing the evidence most strongly in that party's favor. *See* Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978).

### Application of Ohio Law

{¶ 17} We first address Paramount Farms' assertion the trial court should have applied California law on remand.

{¶ 18} In *Paramount Farms I*, we seemingly made inconsistent findings with regard to

whether Paramount Farms' claims were Ohio or California claims.[1]  In discussing whether the Ohio or California statute of limitations was applicable to the intentional interference with contract claim, we observed that "[t]he contract allegedly interfered with is one that was entered into in Ohio, was executed by an Ohio corporation and allegedly interfered with in Ohio." *Paramount Farms I*, 2014-Ohio-986 at ¶ 16.  However, with regard to Ventilex B.V.'s assertion of res judicata, we held that

> An Ohio forum court applies the procedural law of the forum state, but must give effect to the substantive law of the state with the most significant contacts to the case.  *Lawson v. Valve-Trol Co.*, 81 Ohio App.3d 1, 3-4 (9th Dist.1991).  The trial court found that California was the state with the most significant contacts, and the parties do not dispute that on appeal.  Ohio courts have determined that res judicata is a substantive rule of law, and therefore we will apply California's doctrine of res judicata.

*Id.* at ¶ 20.

{¶ 19} The confusion in *Paramount Farms I* is in large part due to the fact there was never an issue as to whether Ohio or California res judicata law applied.  Because the parties only argued the application of California res judicata law, we resolved the issue solely based upon California res judicata law.  We did not find in *Paramount Farms I* that California was the state with "the most significant contacts."  Rather, we only observed that the parties and the trial court all proceeded upon that assumption with regard to the application of California res judicata law.  By contrast, we specifically found that the intentional interference with contract claim accrued in Ohio.  *Paramount Farms I* at ¶ 16 (the contract allegedly interfered with is one that was entered into in Ohio, was executed by an Ohio corporation and allegedly interfered with in Ohio).  Although a conflict of laws analysis would have provided us with an opportunity to more clearly articulate that the intentional interference with contract claim was

---

1. When Paramount Farms filed its complaint in the trial court in 2012, it alleged intentional interference with contract against Ventilex B.V. and fraudulent inducement against Ventilex B.V. and Thomas Schroeder, the president of Ventilex USA.

an Ohio claim subject to Ohio substantive law, the parties did not put that issue before us.

{¶ 20} In light of our clear determination in *Paramount Farms I* that the intentional interference with contract claim accrued in Ohio, the trial court did not err in applying Ohio substantive law to the intentional interference with contract claim.

**Interference with Contracts of Wholly Owned Subsidiary Companies**

{¶ 21} We next address whether the trial court erred in granting summary judgment to Ventilex B.V. on the ground that "[u]nder Ohio law[,] a parent company cannot be held liable for interfering with its subsidiary's contractual relationships."

{¶ 22} The tort of intentional interference with contract was first recognized by the Ohio Supreme Court in *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415 (1995). In that case, the supreme court adopted the definition of the tort in the Restatement of the Law 2d, Torts, Section 766, and held that "in order to recover for a claim of intentional interference with a contract, one must prove (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Id.* at 419.

{¶ 23} Four years later, the supreme court reaffirmed the elements of the tort and expounded on its fourth element, lack of justification, in *Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171 (1999). Specifically, the supreme court held that lack of justification "requires proof that the defendant's interference with another's contract was improper." *Id.* at 176. The supreme court then adopted "Section 767 of the Restatement, which provides guidelines to be followed in determining whether an actor's interference with another's contract is improper." *Id.* at 178. Accordingly,

> in determining whether an actor has acted improperly in intentionally interfering with a contract or prospective contract of another, consideration should be given to the following factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

*Id.* at 178-179.

{¶ 24} In *Kenty*, the trial court granted the defendants' motion to dismiss an intentional interference with contract claim. On appeal, the Tenth Appellate District upheld the dismissal on the ground, inter alia, that a parent company is a party to its subsidiary's contract, and therefore may not, as a matter of law, interfere with its contracts. *Kenty v. Transamerica Premier Ins. Co.*, 10th Dist. Franklin No. 93AP-478, 1993 WL 478056, *4 (Nov. 18, 1993). On appeal, the supreme court reversed the Civ.R. 12(B)(6) dismissal of Kenty's claim of intentional interference with contract. The supreme court held that "[a]ssuming all of the facts alleged in [the] complaint are true," and "drawing all inferences in favor of Kenty, as we are required to do," "Kenty's complaint addresses all of the elements of intentional interference with a contract," and that the breach of the contract could have been induced by the defendants. *Kenty*, 72 Ohio St.3d at 419.

{¶ 25} Paramount Farms argues that because *Kenty* concerned an intentional interference with contract claim involving a parent company and a subsidiary, and because the supreme court reversed the Tenth Appellate District's dismissal of the claim, the supreme court "squarely addressed the issue presented in this appeal and held that a corporate parent can interfere with its subsidiary's contracts," thus, expressly repudiating the Tenth District's "bright-line rule of corporate parent immunity."

{¶ 26} Contrary to Paramount Farms' assertion, *Kenty* simply reversed "the judgment of the court of appeals to the extent it affirm[ed] the trial court's dismissal" under Civ.R. 12(B)(6) of the intentional interference with contract claim of Kenty's complaint. *Kenty*, 72 Ohio St.3d at 420. In reversing the appellate court's decision, the supreme court did not discuss in any respect the parent company/subsidiary relationship and whether, as a matter

of law, a parent company is privileged as such to interfere with its subsidiary's contract. Paramount Farms essentially construes the supreme court's silence on this issue as settling it. In doing so however, Paramount Farms overlooks the supreme court's holding that "[a] reported decision, although [in] a case where the question might have been raised, is entitled to no consideration whatever as settling * * * a question not passed upon or raised at the time of the adjudication." S*tate v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 11.

{¶ 27} We therefore find that *Kenty* and *Siegel* did not pass upon the issue of whether a parent company is privileged to interfere with a subsidiary's contract. Rather, the Ohio Supreme Court merely used *Kenty* and *Siegel* as an opportunity to recognize and reaffirm intentional interference with contract as a tort in Ohio, as several Ohio decisions had already done, and to adopt the Restatement of the Law 2d, Torts; specifically, Section 766 for its definition and elements of the tort, and Section 767 for the factors to consider in determining whether an actor has acted improperly in intentionally interfering with another's contract.

{¶ 28} Paramount Farms next argues the trial court improperly relied on three federal decisions to support its holding that a parent company is legally incapable under Ohio law of interfering with a subsidiary's contract. As stated earlier, the trial court solely relied on *Canderm*, 862 F.2d 597; *Kirk*, 2010 WL 1387887; and *ITS*, 823 F.Supp.2d 772.

{¶ 29} We note at the outset that decisions of lower federal courts constitute persuasive authority only and are not binding on Ohio appellate courts. *McKettrick v. McKettrick*, 12th Dist. Warren No. CA2014-05-076, 2015-Ohio-366, ¶ 21. Upon reviewing the three federal decisions above, we decline to follow their reasoning and find the trial court improperly relied on them in granting summary judgment to Ventilex B.V.

{¶ 30} In *Canderm*, the Sixth Circuit Court of Appeals held that because a parent company is, in effect, the same entity as its subsidiary, it is privileged to interfere with its subsidiary's contract. *Canderm*, 862 F.2d at 601. Specifically, the Sixth Circuit found that

> Ohio courts have approved what other courts have referred to as "the well-recognized privilege of officers, directors, officers, and creditors to interfere with contracts in the furtherance of their legitimate business interests...." *Int'l. Mining Co., Inc. v. Allen & Co., Inc.*, 567 F.Supp. 777 (S.D.N.Y.1983). Thus, in Ohio, "one is privileged to purposely cause another not to perform a contract with a third person where he in good faith is asserting a legally protected interest of his own, which he believes will be impaired or destroyed by the performance of the contract." *Pearse v. McDonald's Systems of Ohio, Inc.*, 47 Ohio App.2d 20 (1975). It would appear, then, that the trial court was correct in its conclusion that SPI, the parent company of Elder, was, in effect, the same entity as Elder, and, so, was privileged to become involved in the relations between Canderm and Elder.

*Id.*

{¶ 31} In *Kirk*, a case involving a claim of tortious interference with employment relationships, the Federal District Court for the Northern District of Ohio held that "under Ohio law, a plaintiff cannot state a claim for tortious interference against a parent company for interfering with the business relationship, including employment relationships, of its subsidiary, because the parent company is not a third-party to its subsidiary's business relationship." *Kirk*, 2010 WL 1387887 at *8. The federal district court held that "[w]hile under Ohio law, claims for tortious interference with contract and tortious interference with employment relations are not identical, * * * the Sixth Circuit's analysis in *Canderm* and *Servo Kinetics* [a federal decision applying Michigan law] applies to this case." *Id.* at *7.

{¶ 32} In *ITS*, the Federal District Court for the Southern District of Ohio held that "[u]nder Ohio law, a parent company is privileged to interfere with the contracts of a subsidiary for the purpose of protecting the parent company or the subsidiary's financial interest." *ITS*, 823 F.Supp.2d at 784. In support of its holding, the federal district court cited *Canderm*. The court further held that the "multi-factor test from Section 767 of the Restatement of the Law [2d], Torts * * * does not apply to a claim of tortious interference asserted against a parent company. The privilege enjoyed by a parent company is not dependent on a Section 767 analysis." *Id.* The court did not cite any case law in support of

its broad statement.

{¶ 33} We find that the foregoing federal decisions do not settle the issue of whether, in Ohio, a parent company can interfere with a subsidiary's contract as a matter of law. Although the decisions speak directly to the issue at bar, none of the decisions cite an opinion from an Ohio court explicitly adopting the proposition for which Ventilex B.V. cites these federal decisions.

{¶ 34} Indeed, in support of its holding that a parent company is privileged to interfere with a subsidiary's contract, *Canderm* relied on *Allen*, a federal decision applying New York law, and *Pearse*, a decision from the Tenth Appellate District. *Pearse* dealt specifically with the violation of a franchise license agreement and did not address the parent company/subsidiary relationship and whether, as a matter of law, a parent company is privileged as such to interfere with its subsidiary's contract. With regard to *Kirk* and *ITS*, the other two federal decisions relied upon by the trial court, we note that they simply cite *Canderm* without discussion or analysis and are thus merely extensions of *Canderm*.[2]

{¶ 35} We therefore find that the trial court improperly relied on *Canderm* and its progeny in granting summary judgment to Ventilex B.V. regarding Paramount Farms' intentional interference with contract claim.

{¶ 36} Lastly, Paramount Farms argues the trial court erred in not applying the multi-factor balancing test under the Restatement of the Law 2d, Torts, Section 767.

{¶ 37} The tort of intentional interference with contract occurs "when a person, without a privilege to do so, induces or otherwise purposely causes a third person * * * not to perform a contract with another." *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr.*

_____

2. In addition to *Canderm*, *Kirk*, and *ITS*, Ventilex B.V. also cites two other decisions in support of its claim a parent company is privileged to interfere with a subsidiary's contract, to wit: *Wamen v. Goodyear Tire & Rubber Co.*, N.D.Ohio No. 5:13CV1084, 2014 WL 185901 (Jan. 15, 2014); and *Horton v. Telxon Corp.*, 99 Misc.2d 83 (C.P.1999). Because those decisions solely rely on *Canderm* to support their holding, we likewise decline to follow their reasoning. We further note that both *Wamen* and *Horton* primarily dismissed the intentional interference with contract claim on the ground there was either no contract or no breach of contract.

*Trades Council*, 73 Ohio St.3d 1, 14 (1995). As stated earlier, the Ohio Supreme Court has adopted "Section 767 of the Restatement, which provides guidelines to be followed in determining whether an actor's interference with another's contract is improper." *Siegel*, 85 Ohio St.3d at 178. "The issue in each case is whether the interference is improper or not under the circumstances, [and] whether * * * the conduct should be permitted without liability, despite its effect of harm to another." *Id.* at 176. Accordingly, a court determining whether an actor's interference with a contract was improper or "privileged" should consider the following factors:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

*Id.* at 176, 178 (even if an actor's interference with another's contract causes damages to be suffered, the interference does not constitute a tort if the interference is justified).

**{¶ 38}** Comments under Section 767 provide that Section 767 applies to intentional interference with contract and "states the important factors to be weighed against each other and balanced in arriving at a judgment[.]" Restatement of the Law 2d, Torts, Section 767, Comment b. "[T]he weight carried by these factors may vary considerably and the determination of whether the interference is improper may also vary; but the listed factors are nevertheless important[.]" *Id.* at Comment a. In particular, the "nature of the actor's conduct" and "the relation between the parties" are both important factors in determining whether the interference was improper. *Id.* at Comments c and i. "The issue is not simply whether the actor is justified in causing the harm, but rather whether he is justified in causing it in the manner in which he does cause it." *Id.* at Comment c.

**{¶ 39}** It is apparent, based upon the Ohio Supreme Court's decisions in *Kenty* and

*Siegel*, that Ohio recognizes the tort of intentional interference with contract and the Restatement of the Law 2d, Torts, Section 766 and 767, as setting forth the elements of the tort and the factors to be considered in determining whether an actor's interference lacked justification. On the other hand, Ohio has not explicitly adopted the proposition, advanced by Ventilex B.V., that separate and apart from the Section 767 justification factors, a parent company is privileged to interfere with the contracts of its subsidiary. The parent company/subsidiary relationship falls within the ambit of the "relations between the parties" factor of Section 767. This factor is but one of the several factors contained within Section 767. We therefore reject Ventilex B.V.'s invitation to elevate the parent company/subsidiary relationship to a super, threshold factor, the presence of which precludes the consideration and weighing of the various Section 767 factors.

{¶ 40} In the case at bar, the trial court did not, in any respect, consider the factors in Section 767, including the parent company/subsidiary relationship between Ventilex B.V. and Ventilex USA, before granting summary judgment to Ventilex B.V. Rather, the trial court simply found that as a parent company, Ventilex B.V. could not, as a matter of law, be held liable for interfering with Ventilex USA's contract, based solely on nonbinding federal decisions that draw a questionable conclusion concerning Ohio law. In light of the Ohio Supreme Court's adoption of Section 767, the foregoing comments under Section 767, and our earlier findings within this opinion, we find the trial court erred in granting summary judgment to Ventilex B.V. without first considering and addressing the factors listed in Section 767 of the Restatement of the Law 2d, Torts.

{¶ 41} The judgment of the trial court granting summary judgment to Ventilex B.V. is therefore reversed and the matter is remanded to the trial court with instructions to consider and weigh the factors in Section 767 of the Restatement of the Law 2d, Torts. Paramount Farms' assignment of error is sustained.

- 13 -

**{¶ 42}** Judgment reversed and remanded.

RINGLAND and HENDRICKSON, JJ., concur.