ALLEY et al., Appellants,

v.

WENDY'S INTERNATIONAL, INC., Appellee.

[Cite as *Alley v. Wendy's Internatl., Inc.* (1995), 107 Ohio App.3d 810.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–940819.

Decided Dec. 20, 1995.

*Richard H. Glazer,* for appellants.

*Droder & Miller Co., L.P.A., Edward J. Collins* and *Jeffrey T. Kenney,* for appellee.

SHANNON, Judge.

This is an appeal from an order granting the motion of the defendant-appellee, Wendy's International, Inc., for a directed verdict at the close of the case-in-chief of the plaintiffs-appellants, Richard J. Alley and his wife Mary, in an action seeking damages for personal injury and loss of consortium.

On January 13, 1990, a clear, dry, winter day, the appellants entered a restaurant owned and operated by the appellee to purchase food to be consumed

on the premises. Mary, a diabetic suffering from some of the debilitations of that ailment, sat at a table while her husband purchased the food at the counter. Richard returned with their meals, placed the items on the table and went to obtain napkins and straws. After placing them on the table, Richard prepared to sit down on a chair at that table.

At the location in question, the floor of the restaurant was covered with carpet, adjacent to which was a quarry tile surface separated from the carpet by a vinyl strip designed to prevent the material by which the tile was cleaned from staining the carpet. Each tile measured approximately four inches by eight inches, and the joints or grouting between the tiles varied from one-half to five-eighths of an inch in width. There was a slight depression of the joints so that the tiled surface was not completely level. The vinyl "transition" strip was three inches wide and three-eighths of an inch high, with beveled or rounded edges, and a flat surface.

The chair upon which Richard intended to sit was, according to his testimony, "positioned on carpet and tile" when he approached it. He used his left hand to pull the chair away from the table, but was unable to say whether at that time its front legs were on the carpet and its back legs on the tile surface.

As Richard was bending his knees preparing to seat himself and putting "a small amount of pressure" with his hand on the back of the chair, it, in his words, "took off" to one side at almost a forty-five degree angle, "on its own." He testified further that he did nothing to cause the chair to go off in that direction, but that as the chair moved away from him, his body "stretched out and twisted." The chair never tipped in any way, nor did Richard lose his grip on it. According to his testimony, if he had let go of the chair he would have fallen to the floor.

At that instant, Richard heard a loud noise like a gunshot and experienced sharp pain in his left leg. He "hopped" on his right foot to a chair and was seated there until medical assistance arrived. Subsequent examination at the hospital to which he was transported revealed that Richard had suffered a spiral fracture of his left femur, one which a medical expert stated occurred as a result of the "twisting" motion involved in the incident.

The appellants called as a witness Bernard J. Krotchen, a licensed, registered consulting engineer, to testify as a safety expert. He expressed the opinion that the chair upon which Richard intended to sit was placed so close to the nosing or transition strip and tiled area that when a customer pulled the chair out, its legs would pass over the strip onto the tile and so produce an erratic movement of the chair. Krotchen hypothesized that the nylon glides on the bottom of the chair legs would "impinge" on the strip and tile and that Wendy's should have known of the potential for erratic movement. In Krotchen's opinion, when Richard pulled the chair from the carpeted area onto the tiled area, its front legs caught on the

nosing strip and the nylon glides impinged on the grouted joints between the tiles. The glides released from both the strip and the joints, and the chair moved rapidly backwards, causing Richard to react and to fracture his femur.

The fundamental predicate upon which the motion for a directed verdict was made was that, because Richard never testified that the chair either hung up or impinged upon the joints or the transition strip, there was no evidence upon which Krotchen could, in law, rely to base his opinion relative to the cause of Richard's injury.

Upon cross-examination, Richard was asked: "Was there any feeling of impingement or hanging up with the chair?"

After his counsel's objection was overruled, Richard responded: "I have no way of knowing if it hung in anything or not."

When the expert witness, Krotchen, was questioned upon cross-examination, the following exchange was had:

"Q. And where did you get that information concerning an impingement, sir? Did Mr. Alley testify in his deposition that there was an impingement?

"A. Not precisely, no.

"Q. Did Mr. Alley testify that the chair got caught up in the grout at any point, sir?

"A. No, because he—

"MR. GLAZER: Let him finish.

"THE COURT: No.

"Q. Did Mr. Alley testify that the chair got stuck on that transition strip?

"A. He wouldn't know. He wouldn't know that.

"Q. But you would know that?

"A. I would know, based on the conditions and his statement, yes, in any analysis of this type of condition.

"Q. Just so I understand. You do agree with me, at least to this extent, that the way this chair started to move is because Mr. Alley moved it; isn't that correct, sir?

"A. Yes."

■ The first of the two assignments of error given us, that the court erred in granting the motion of the appellee for a directed verdict, rests upon the argument that "under Ohio law, the injured plaintiff is not required to describe precisely what caused him to fall, lose balance, and become injured."

Appellee submits that the cause of an injured party's fall is crucial to establishing liability, and that an unexplained fall will not suffice to raise that issue for resolution by a trier of fact.

Appellants concede the legal accuracy of appellee's proposition in these words from their brief:

"It is fundamental that in order to establish negligence, the plaintiff must establish by a preponderance of the evidence not only that the defendant was negligent but that the defendant's negligence was the proximate cause of the plaintiff's injury."

Civ.R. 50(A)(4) mandates that a court, when contemplating a motion for a directed verdict, must construe the evidence most strongly in favor of the party against whom the motion is directed and shall direct a verdict for the moving party when the court finds that, upon any determinative issue, reasonable minds could come to but one conclusion which is adverse to the adverse party.

The recorded colloquy between court and counsel, after the motion was argued and submitted, demonstrates that the trial court reviewed, extensively, the testimony and evidence then before it in light of the law, ticking off one by one the allegations of the complaints. The court concluded:

"I can't find in this, throughout the three days that we've been here, any connection between the pleading that was filed in this case and the proof that has been offered."

In his discourse, the trial judge acknowledged Krotchen's qualifications as an expert "in the area of safety" and "risk-management" but pointed out Richard Alley's failure to define any cause of his injury attributable to any act or omission by Wendy's.

While he did not refer to Evid.R. 703 specifically, it is apparent that the judge had it in mind when evaluating the effect in law of Krotchen's testimony. Counsel for the movant had argued, before the judge spoke, that:

"There is absolutely no indication in his testimony, as Mr. Krotchen would testify, that the chair got hung up in grout, that the chair got impinged on a transition strip, that any of the things that Mr. Krotchen said occurred or would have to occur in order to make this a negligent design and, therefore, cause his injuries to actually happen."

Evid.R. 703 provides:

"The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."

It is founded on the precept long accepted in Ohio that the hypothesis upon which an expert is asked to state his opinion must be based upon facts within the personal knowledge of the expert or upon facts shown by other evidence. The syllabus in *State v. Jones* (1984), 9 Ohio St.3d 123, 9 OBR 347, 459 N.E.2d 526, makes that certain:

"Pursuant to Evid.R. 703, facts or data upon which an expert bases an opinion must be those perceived by him or admitted in evidence at the hearing."

Here, Richard failed, in his testimony or by other admissible evidence, to provide his expert, Krotchen, with facts upon which the expert could base his opinion as to the cause of Richard's injury. Simply put, there was nothing in the appellants' case to support Krotchen's opinion that the legs of the chair impinged or were caught up on the transition strip or the grouting. Without that support, Krotchen's opinion is legally useless in this case because it fails to meet the test mandated by Evid.R. 703.

Accordingly, the court did not err in granting the motion for a directed verdict. As the case stood, reasonable minds could have come to but one conclusion, *viz.*, appellants adduced no evidence to demonstrate that Wendy's was guilty of negligence which proximately caused their injuries.

The second assignment of error is that the court erred in granting a directed verdict against appellant Mary Alley.

Because we have concluded and hold that Wendy's cannot be said upon the state of the record before us to have committed a legally cognizable tort upon Richard Alley, Mary Alley's claim for loss of consortium must fail as a matter of law.

Without question, an action for loss of consortium occasioned by a spouse's injury is a separate and distinct cause of action. See *Bowen v. Kil-Kare, Inc.* (1992), 63 Ohio St.3d 84, 585 N.E.2d 384. But, in his opinion in the case, Justice Douglas recognized that a claim for loss of consortium is derivative. Inescapably, it must be concluded that if Richard was not the victim of a tort committed by Wendy's, then Mary's claim vanishes. This is not to say that Mary did not, inferentially at least, suffer the loss of Richard's society, companionship, care, attention, comfort, love and solace as alleged. All that can be said to be true factually, but in law any such injuries are not compensable absent the commission of a legally cognizable tort upon the person of her husband, Richard.[1]

---

1. In light of this holding, we believe it to be improvident to rule upon the appellee's submission that, because Mary Alley did not testify to support her cause of loss of consortium and consequent damages, her claim was not cognizable in law. Her absence is attributable, it seems, to the effects of a stroke suffered by her in 1988, including some memory failures.

For the reasons stated, we find neither assignment of error to have merit, and they are overruled.

There is a principle so ancient in origin that it is expressed in Latin: *damnum absque injuria esse potest.* It is one so imbedded in civil law as administered in Ohio that it is uniformly accepted that there can be loss or damage without the violation of a legal right.

As odd as it may seem to today's increasingly litigious society, one cannot always look to others to make compensation for injuries received, because some incidents occur wherein the sufferer must alone bear the consequences. Recovery of damages depends, in law at least, upon a right of action for a tort, *i.e.,* a civil wrong, inflicted by the alleged wrongdoer. The act must not only be hurtful but wrong, *i.e.,* one which results from a violation of a duty owed by the wrongdoer to the one suffering hurt. Damage without wrong does not constitute a cause of action.

The judgment of the Hamilton County Court of Common Pleas is affirmed.

*Judgment affirmed.*

SUNDERMANN, J., concurs.

HILDEBRANDT, P.J., dissents.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.

HILDEBRANDT, Presiding Judge, dissenting.

I dissent from the harsh result achieved by the majority in this cause. According to its analysis, a plaintiff in Mr. Alley's position must establish the element of causation to a "certainty," and not by merely a preponderance of the evidence to get his case before a jury. I also take exception to the majority's application of *State v. Jones* (1984), 9 Ohio St.3d 123, 9 OBR 347, 459 N.E.2d 526, to affirm the action of the trial court.

As noted by the majority, Mr. Alley testified that while pulling the chair out to seat himself, it "took off * * * on its own." The appellants' expert, Bernard J. Krotchen, testified that when Alley pulled the chair from the carpeted area onto the tiled area, its front legs caught on the nosing strip and the "nylon glides of the legs impinged on the grouted joints and the front legs caught on the nozing [*sic* ] strip as he proceeded to push the chair back.

"And my further opinion is that when the chair glides released from the grout joints and the nozing [*sic* ] strip, the chair glided rapidly backwards and caused

Mr. Alley to react adversely. This happened in just split seconds, imperceptible to most people.

"When the chair glides gave way and moved back, this caused him to tense up."

The majority fails to note two important facts that are significant to the outcome of this case. First, the appellee admitted for the purposes of its motion for a directed verdict that the area in which Alley was injured was negligently designed. Furthermore, and more importantly, during the course of his investigation, Krotchen visited the premises where Alley was injured on three occasions, measuring the nosing and grouting, inspecting the tile, measuring the chair legs, and creating a model, based on his observations, of the situation encountered by Alley at Wendy's. Krotchen also reviewed testimony of Mr. Alley and the appellee's expert, as well as the testimony of other witnesses, performed visual tests, and moved the chair at the restaurant to confirm his opinions.

In *State v. Solomon* (1991), 59 Ohio St.3d 124, 570 N.E.2d 1118, the court discussed meeting the requirements of Evid.R. 703. There, the court observed:

"Accordingly, we find that where an expert bases his opinion, *in whole or in major part, on facts or data perceived by him,* the requirement of Evid.R. 703 has been satisfied. It is important to note that Evid.R. 703 is written in the disjunctive. Opinions may be based on perceptions or facts or data admitted in evidence." (Emphasis added.) *Id.* at 126, 570 N.E.2d at 1120.

The *Solomon* court was critical of the analysis set forth in *State v. Jones, supra,* because the court failed to discuss whether expert medical testimony was admissible where the doctors personally examined the defendant and arrived at their opinions based, in whole or in part, on perceptions gained from their direct personal examinations of the defendant. *Solomon, supra.*

Because the trial court, in ruling upon the appellee's Civ.R. 50(A) motion, was confined to interpreting the evidence most strongly in favor of appellants, and because Krotchen's opinion was based in major part upon facts or data perceived by him, I would sustain appellants' first assignment of error. To hold otherwise creates a rule such that had Mr. Alley suffered amnesia as a result of going into shock as a result of the pain of his injury, he would not be able to recover for his injury because an expert's testimony would not be available.

I would also sustain appellants' second assignment of error. While I agree that Mrs. Alley's consortium claims must rise or fall according to the success of Mr. Alley's cause of action, because I believe Mr. Alley does have a legally cognizable claim against Wendy's, Mrs. Alley's claim also should have been submitted to the jury. Certainly, Mr. Alley would be qualified to testify regarding the services and companionship that he performed for his wife.

For the reasons stated above, I would reverse the judgment of the trial court and remand this matter for trial.